CASENDANIA SANFORD et al., Respondents, *v.* THURMAN D. ELLITHORP et al., Appellants.

In an action brought by the heirs of a deceased grantor to set aside his conveyance on the ground of undue influences, his widow, who as his wife joined in the conveyance, is " a person interested in the event of the action" within the meaning of the Code of Civil Procedure (§ 829), and as such is incompetent to testify to personal transactions or communication between her and the deceased.

An objection to a question calling for such testimony to the effect that it relates to personal transactions with the deceased by an interested witness is sufficient ; it is not necessary to refer to the section of the Code, or other authority by which the objection could be sustained.

*Somerville* v. *Crook* (9 Hun, 664), *Levin* v. *Russell* (42 N. Y. 251), *Williams* v. *Sargeant* (46 id. 481), *Quinby* v. *Strauss* (90 id. 664), distinguished.

*It seems* that if the objection had been simply that the witness was not competent as a witness under said section it would have been unavailing because too general.

Plaintiffs were allowed to prove, under objection, declarations of the grantor to various persons, made a year or more after the execution of the deed, and in the absence of defendant, as to what he had done with his property, and his understanding of the object of the conveyance. *Held* error.

(Submitted December 14, 1883 ; decided February 26, 1884.

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made November 15, 1881, which affirmed a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts material to the questions discussed are stated in the opinion.

*Parker & McIntyre* for appellants. The court erred in allowing the widow of the deceased grantor to give evidence in plaintiffs' favor against defendants' objection that she was incompetent. (1 Wash. on Real Property, 234–35, § 16, 284–85; *Robinson* v. *Bates*, 3 Metc. 40; Herman on Estoppel, §§ 46, 60, 111.) It was not necessary in the objections to the testimony to refer to the section of the Code under which it was claimed to be incompetent. (*Miller* v. *Montgomery*, 78 N. Y. 282; *Church* v. *Howard*, 79 id. 415, 420; *Hill* v. *Hotchkin*, 23 Hun, 414; 1 Greenl. on Ev., § 390.)

*Leslie W. Russell* for respondents. The objection to the evidence of the grantor's wife that she was incompetent, and her evidence detailed private transactions between husband and wife was too general. (*Pratt* v. *Elkins*, 80 N. Y. 198; *Ham* v. *Van Orden*, 84 id. 271; *Quinby* v. *Strauss*, 90 id. 664; *Tooley* v. *Bacon*, 70 id. 34; *Levin* v. *Russell*, 42 id. 251; *Williams* v. *Sargent*, 46 id. 481.) It is competent to testify to things seen or heard with which the witness was in no way connected. (*Carey* v. *White*, 59 N. Y. 336; *Hildebrant* v. *Crawford*, 65 id. 107; *Badger* v. *Badger*, 88 id. 559.) Declarations of the grantor offered and received for the purpose of showing his state of mind were competent. (*Comstock* v. *Hadlyme*, 8 Conn. 255; *Waterman* v. *Whitney*, 11 N. Y. 157.)

DANFORTH, J. This action was commenced in March, 1879, by Mrs. Casendania Sanford and Mrs. Livonia Smith, daughters of one D. Ellithorp, claiming that certain conveyances of land by their father to his sons, Thurman and Pascal Ellithorp, had been obtained from him without consideration, and by threats, and false and fraudulent representations, and by undue influence, and upon their promise that at his death they would hold such lands in trust for his other children then living, as well as for the children of Rosalie, his deceased daughter, and that he, while weak and enfeebled in mind and body, and mentally unsound and incompetent, under said undue influence,

and prevailed upon and deceived by these false and untrue solicitations, promises, representations and threats, did on the 16th day of May, 1870, convey to them the lands in question. The plaintiffs prayed that the deeds be declared void, and they be adjudged to own and stand seized of the same rights and interests in the lands as though they had not been conveyed, and the defendants Thurman and Pascal to hold title thereto as trustees for the plaintiffs as to the shares they should receive as heirs of their father. The other defendants are Ada, the wife of Thurman, Ella, the wife of Pascal, and Anna S. Chandler and Harry D. Chandler, minor children of Rosalie. These children by their guardian submit to the direction of the court. Thurman and Pascal, by their answer, put in issue the allegations of the plaintiffs, but upon trial before a referee, and upon appeal to the General Term, judgment has followed the prayer of the complaint, and they now appeal to this court.

It is apparent from this statement that the plaintiffs have assigned every known reason by which courts have been induced to interrupt the disposition of property by its owner, and we find in a single clause of the complaint the somewhat inconsistent grounds of mental unsoundness and incompetency, which would exclude even the possible ability to contract, and an agreement between the grantor of the property and the grantees that the property so conveyed should be held in trust, and furthermore a weak and enfeebled mind which has been not only compelled by threats, but also persuaded by false representations and induced by promises, so that the actor is presented as first incapable and not a free agent, and next capable, but at once a victim and a dupe.

The referee has found neither insanity nor incompetency on the part of the grantor, nor threats on the part of the grantees, but that the deeds were procured by undue influence on his mind while it was enfeebled, and that they were executed "for his benefit and disposal, and the reserved use and benefit of himself and his heirs, as if said conveyances had not been made." The respondents now claim nothing more. While it is contended by the learned counsel for the appellant that there

is no legal evidence tending to show undue influence, or false representations, or that the land was conveyed in trust, on the part of the respondents such evidence is said to be abundant. It is, however, not necessary for us to pass upon the point thus put in controversy, for we are of opinion that by reason of the admission of improper evidence against the objection of the defendants, the appeal must prevail.

*First.* The testimony of Mrs. Cooper : At the time of the execution of the deeds she was the wife of the grantor ; as such, she assented to the conveyance and evidenced the same by her acknowledgment in the manner required by law. So long as his deed stood, she was estopped from setting up any right against one claiming under it, but the moment his deed was avoided, she was remitted to her right of dower. This result follows from the fact that she had no interest in the land to convey, but only an inchoate right or chose in action, contingent upon her surviving her husband. She was precluded from setting it up so long as the deed stood, to which she had consented. Without her assent the deed would not have prejudiced her right (1 R. S. 742, § 16), and if the deed was canceled, her consent would become of no importance. She was, therefore, a person interested in the event of the action. The defendants derived their title from her husband, who at the time of the trial was dead. The testimony she gave related to communications between herself and that deceased person ; as to them she was not a competent witness. The General Term also held that it was clear error to admit the evidence, and that, if properly objected to, its admission would have required a reversal of the judgment. The objections were, among others, that the witness was not competent ; that she was interested in the event of the action ; and again, when a question was put as to whether he (the grantor) expressed to her " fear of being absolutely ruined unless he conveyed his property," bringing the inquiry close to the points in controversy, the referee admitted the evidence " to show," as he stated, " the mental state and condition of the husband," and received for answer, " he did. He wanted to put the property in his son's hands to save it," shows how

he overcame her reluctance to sign the deeds, and among other things that " he said if I didn't sign them, it would be the means of his ruination, and separation between us. He said if I would, I should not be wronged by so doing, and be well paid, and the boys would hold them as trust deeds."

The defendants then moved to strike out the conversations between the witness and husband, on grounds already stated, in objecting to the testimony, and " that witness seeks to show the purpose of the conveyance of the land in controversy by deceased to his sons, and that it details personal and private transactions between husband and wife." The motion was denied, and the testimony retained as evidence of the mental condition of the grantor. Other evidence was then given, equally objectionable. It cannot be doubted that her testimony was of an important character, bearing distinctly upon every issue in the case. The objection was in substance that it related to personal transactions with the deceased by an interested witness, and it was not necessary to refer to the section of the Code or other authority by which the objection could be sustained. It is enough that the objection was in fact well taken. It pointed directly to the respondent's testimony as incompetent, because it involved a personal communication between the witness — an interested person — and the deceased grantor. If the objection had simply been that the witness was not competent under the section referred to (§ 829), it would have been unavailing, because too general. (*Ham v. Van Orden*, 84 N. Y. 271.) But the reasons for the exclusion were in the relation of the witness to the event of the action, the character of the testimony, and the source of title in the defendants to the property in controversy. The attention of the referee and adverse counsel was called to them, and that was enough. (*Simpson v. Downing*, 23 Wend. 316.) The cases to which the learned counsel for the respondent has referred are not to the contrary, viz. : *Somerville v. Crook* (9 Hun, 664), *Levin v. Russell* (42 N. Y. 251), *Williams v. Sargeant* (46 id. 481), and *Quinby v. Strauss* (90 id. 664).

In all of them the terms of objection were of the most general kind, viz.: "objected to."

The case here is quite different, and specific grounds of objection were stated. Moreover the course of examination and the ruling of the referee were such that it must have been understood that the objection was to the competency of the witness to answer the question addressed to her under the prohibition of the section of the Code above referred to.

*Second.* The plaintiffs were improperly allowed to prove declarations of the grantor to various persons after the execution of the deeds as to what he had done with his property. By Moulton : " That he had put it out of his hands to keep it away from Mrs. Norton ; that he did not know but what Casendania thought she wasn't going to get any thing, but he said he put them in the boys' hands so that the girls could get some of it, and he spoke of Rosalie, and said they would both get some of the property." Asked by the plaintiff's counsel : " Did he say any thing about trust?" "Yes, sir ; he used the words 'in trust ; ' he said the boys 'were capable of taking care of it.'" William Drew being asked : "Did D. Ellithorp ever tell you why he deeded ?  Have any conversation with him?" Answered : "He told me, the reason why he conveyed the property to his sons was because of that woman Mrs. Norton, and he said he had got to put it into their hands in order to save it ; if he didn't he would be ruined." Ellis asked : "After he had deeded his property away to his boys, did you have a conversation with him?" Answered : "In 1874 or 1875 I asked him if Louisa (one of plaintiffs) had the farm at Moers Forks (one of those conveyed), and he said, 'no, the boys will buy a place for her and her children,' and at a subsequent conversation, that he supposed the girls would have some of his property." John Drew stating that about three months before the death of the grantor he had talks with him about his matters and his difficulties, and asked to state them, says : "He said he didn't think that Thurman would deal justly by the girls and his wife, because he didn't come up to see him very often."

The objection to these several items of testimony was taken in due time not only as incompetent and immaterial, but specifically as not evidence against the defendants who were not present, and as improper in that mode to show the purpose of the conveyance of the land in controversy. The referee overruled the objections and received the evidence, " to show his (the grantor's) mental condition and the state of his affection for his children."

Conceding that such declarations at or near the time of a transaction are admissible, they cease to be so when any considerable period has elapsed between the event spoken of and the statement in question. The conveyances were made in May, 1870. The conversation with William Drew was in June, 1871; with Moulton in 1872, 1873, or 1874; with Ellis in 1874 or 1875; with John Drew three months before the grantee's death, which occurred November 14, 1877. Not only, therefore, were these declarations inadmissible, because made at a time too remote from the occurrence to which they related, but it is impossible to find in the testimony of either witness any thing which legitimately bears upon the mental state of the grantor at the time of the execution of the deeds, nor is it of such a nature as to show either fact as to which the referee received it. It discloses by the grantor's declarations his then understanding of the object of the conveyances and his apprehensions as to the future conduct of his sons and grantees — circumstances, no doubt, if properly established, of importance, as they relate to other questions, but in no wise tending to show the condition of mind or the capacity of the grantor at the time the deeds were executed. The distinction is pointed out in *Waterman* v. *Whitney* (11 N. Y. 157), between cases which involve an inquiry into the sanity or mental capacity of a person doing an act and those which involve an inquiry as to whether that act was induced by fraud or duress. In the last case, his subsequent declarations are held to be inadmissible to establish the point in issue, because they might result from a changed purpose, or from external motives operating on an intelligent mind; in the other, admissible because they relate

to its involuntary state or condition.    The evidence before us has no such relation.

We think the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except RUGER. Ch. J., dissenting.

Judgment reversed.