JAMES H. HOAG, Respondent, v. EDWARD WRIGHT et al., as Executors of HESTER HOAG, Deceased, Appellants.

1. EVIDENCE — TESTIMONY OF WITNESS DISQUALIFIED UNDER SECTION 829 OF THE CODE OF CIVIL PROCEDURE — WHEN OBJECTION THERETO INSUFFICIENT TO EXCLUDE EVIDENCE. Where, in an action brought by a son of a testatrix against the executors of her will upon promissory notes payable to him and purporting to be made by testatrix, the making and delivery of which were denied by defendants, plaintiff was asked, before the notes were read in evidence and before any independent testimony as to the delivery thereof had been given, whether they were in his possession prior to the death of his mother, and the question was objected to as incompetent, no other objection being interposed, it is not erroneous to overrule such objection and admit his answer, although the witness, being interested, was incompetent to testify to a personal transaction with his deceased mother under section 829 of the Code of Civil Procedure, since the objection did not challenge the competency of the witness, but the competency of the evidence, whereas the evidence was competent, but the witness was not.

2. SAME — WHEN WITNESS INTERESTED IN EVENT OF ACTION MAY EXPRESS OPINION AS TO GENUINENESS OF SIGNATURES TO DISPUTED PAPERS. Where, after he had testified, without objection, that he was familiar with his mother's signature, plaintiff was asked to examine the notes and state whether or not the signature to each was in his mother's handwriting, to which no objection was interposed except as to his competency as a witness under section 829 of the Code, it is not error to overrule the objection and admit his answer that he thought the signatures were in his mother's handwriting, since the question called for an opinion, not a personal transaction.

3. WITNESS — EXPERT IN HANDWRITING — COMPETENCY THEREOF MAY BE TESTED UPON CROSS-EXAMINATION BY INQUIRY INTO COLLATERAL MATTERS. The competency of a witness offered as an expert in handwriting is a fact necessary to be known in order to learn the value of his opinion, and while it is not an issue raised by the pleadings, it becomes a subordinate issue by the tender of the witness as an expert, and where an

expert in handwriting had testified that, in his opinion, the signatures to disputed papers were genuine, it is competent, upon his cross-examination, to submit spurious signatures to the witness and ask him if he had not, upon a previous trial, after comparing such spurious signatures with genuine signatures in evidence, pronounced them genuine and sworn that they were written by the same hand that had written the signatures proved to be genuine, since any testimony of an alleged expert upon handwriting, which bears on his competency to express an opinion, may, within reasonable limits, be contradicted by other testimony, and the test thereby sought to be applied bore not only upon his competency to express an opinion, but upon the value of his opinion when expressed and tended to show that it was unreliable.

*Hoag* v. *Wright*, 69 App. Div. 381, reversed.

(Argued January 23, 1903; decided February 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 17, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James M. Hunt* for appellants. It was error to permit the plaintiff himself to testify that the signatures attached to the alleged notes were in the genuine handwriting of his deceased mother, Hester Hoag, the testatrix of the defendants. (*Simmons* v. *Havens*, 101 N. Y. 427; *Richardson* v. *Emmett*, 170 N. Y. 412; *Matier of Weeks*, 23 App. Div. 151; *Hobart* v. *Verrault*, 74 App. Div. 444; *Clift* v. *Moses*, 112 N. Y. 426; *Boyd* v. *Boyd*, 164 N. Y. 164.) It was error to permit the plaintiff to testify that the two notes in suit were in his possession prior to the death of his mother. (*Clift* v. *Moses*, 112 N. Y. 426; *Richardson* v. *Emmett*, 170 N. Y. 412.) Error was committed upon the trial in refusing to permit a full cross-examination of plaintiff's handwriting experts. (7 Am. & Eng. Ency. of Law, 109; *Shell* v. *Plum*, 55 N. Y. 592; *Baird* v. *Daley*, 68 N. Y. 547; 8 Ency. of Pl. & Pr. 116; 1 Greenl. on Ev. [16th ed.] § 461 F.)

*Isaac N. Mills* and *Joseph Hover* for respondent. It was not reversible error to permit the plaintiff to testify that the two

notes in suit were in his possession prior to the death of his mother. (*Richardson* v. *Emmett,* 170 N. Y. 412; *Sanford* v. *Ellithorp,* 95 N. Y. 48; *Ham* v. *Van Orden,* 84 N. Y. 271; *Stevens* v. *Brennan,* 79 N. Y. 259; *Clift* v. *Moses,* 112 N. Y. 434; *Kernochan* v. *N. Y. E. R. R. Co.,* 128 N. Y. 559; *Mortimer* v. *M. R. Co.,* 129 N. Y. 81; *Carter* v. *N. Y. E. R. R. Co.,* 134 N. Y. 168; *Simmons* v. *Havens,* 101 N. Y. 433.) The plaintiff was properly permitted to testify that the signatures attached to the notes were in the genuine hand-writing of the testatrix. (*Fisher* v. *Fisher,* 129 N. Y. 654; *Simmons* v. *Havens,* 101 N. Y. 427; *Hobart* v. *Verrault,* 74 App. Div. 444; *Goetting* v. *Webber,* 71 App. Div. 503; *Wing* v. *Bliss,* 28 N. Y. S. R. 198; *Pratt* v. *Elkins,* 80 N. Y. 198; *Robinson* v. *Wheeler,* 25 N. Y. 252; *Bostwick* v. *Van Voorhis,* 91 N. Y. 353.) The testimony, upon cross-examination of several expert witnesses for the plaintiff, as to two spurious signatures of decedent, was properly excluded. (*People* v. *Murphy,* 135 N. Y. 450; *Hilsley* v. *Palmer,* 32 Hun, 472; *People* v. *Pinckney,* 67 Hun, 431; *People* v. *Molineux,* 168 N. Y. 327; *People* v. *Dorthy,* 50 App. Div. 50.)

*Per Curiam.* The plaintiff is the son and sole surviving descendant of the defendants' testatrix, Hester Hoag, who died on the 15th of February, 1895, in the eighty-first year of her age. The action is upon two promissory notes, one for $2,000, dated October 16th, 1890, payable to the order of the plaintiff, and the other for $4,000, dated November 13th, 1894, payable to the plaintiff without words of negotiability. The complaint is in the usual form, and by their answer the defendants denied the making and delivery of both notes and alleged that if made or delivered they were without consideration. The contest upon these issues was long and sharp, as both parties produced much persuasive evidence in support of their respective theories. As the affirmance was unanimous and there was no exception to the charge of the court, our review must be confined to an examination of the rulings relating to evidence.

The plaintiff was the first witness called at the trial, and before the notes were read in evidence they were shown to him, and he was asked whether they were in his possession prior to the death of his mother. He answered that they were. The question was objected to in due time as incompetent, no other objection having been interposed, and to the ruling which admitted the evidence an exception was taken.

The witness, being interested, was incompetent to testify to a personal transaction with his deceased mother according to the express command of section 829 of the Code of Civil Procedure. When proof of the possession of a promissory note and of the genuineness of the signature thereto are exclusively relied upon to establish delivery, the presumption is that the evidence as to possession involves a personal transaction. (*Richardson* v. *Emmett*, 170 N. Y. 412, 417; *Clift* v. *Moses*, 112 N. Y. 426.) When, however, delivery is proved by independent testimony, showing delivery to a third person for the interested witness when he was not present, proof of possession does not imply a personal transaction. At the time the ruling in question was made no evidence as to delivery had been given, and the plaintiff was, therefore, as the case then stood, incompetent to answer the question under consideration.

The objection interposed, however, did not challenge the competency of the witness but the competency of the evidence, whereas the evidence was competent but the witness was not. While an objection to the competency of a witness need not refer specifically to the section of the Code which renders him incompetent, it is necessary to raise the question in some way which makes the intention clear. An objection that the witness is incompetent or interested would, perhaps, be sufficient, but the simple objection that the evidence is incompetent is not specific enough to justify a reversal. (*Sanford* v. *Ellithorp*, 95 N. Y. 48, 52; *Ham* v. *Van Orden*, 84 N. Y. 257, 271; *Stevens* v. *Brennan*, 79 N. Y. 254, 259.) In all the cases to which our attention has been called where the reversal was founded upon section 829, the objections

were so full and clear as necessarily to bring before the minds of the court and the opposing counsel the distinct ground relied upon. Fair practice requires this, so that the court may rule intelligently and counsel may be advised of the risk they are taking and act accordingly. (*Sterrett* v. *Third National Bank of Buffalo*, 122 N. Y. 659, 662.)

While the notes were read in evidence upon the testimony given by the plaintiff only, at a later stage in the case his wife testified that the testatrix, about two weeks before her death, put the notes in an envelope and told her to give them to the plaintiff, which she did promptly, when his mother was not present. The plaintiff also testified that his wife handed him the notes and envelope and that he put them into his desk where they remained until after his mother's death. If the objection had been more specific, the wife might have been called at once and delivery proved by her. Under these circumstances we are of the opinion that the ruling does not present reversible error.

After the plaintiff had testified, without objection, that he was familiar with his mother's signature, he was asked to examine the notes and state whether or not the signature to each was in his mother's handwriting. An objection was interposed, which sufficiently challenged his competency as a witness, but it was overruled and he answered that he thought the signatures were in his mother's handwriting.

The question called for an opinion, not a personal transaction, and the evidence to qualify the witness to express his opinion was not objected to. We think the ruling is sustained by the authorities. (*Wing* v. *Bliss*, 28 N. Y. S. R. 198; affirmed on opinion below, 138 N. Y. 643; *Simmons* v. *Havens*, 101 N. Y. 427.)

The case of *Boyd* v. *Boyd* (164 N. Y. 234) is not in conflict with the authorities cited, for the court united only upon the third proposition discussed in the opinion, which involved no question under section 829. Moreover, upon reading pages 245 and 246, it will appear that the learned judge who wrote in that case was inclined to regard the opinion of an

interested witness as to the genuineness of the signature of his decedent as competent, when not so wrapped up in a personal transaction, during which he saw the decedent sign the paper, as to make it impossible for him to separate what he swore to "from personal knowledge and observation (which was stricken out) from what he subsequently asserts in the same direction as matter of opinion."

Experts were called by both parties to give their opinions as to the genuineness of the signatures to the notes after comparing them with the indorsement of the decedent upon certain checks read in evidence as standards of comparison. Upon the cross-examination of an expert named Reed, called by the plaintiff, it appeared that during his testimony upon a previous trial of this action he had been shown two papers so folded as to disclose only what purported to be the signature of the decedent upon each. He testified in substance that upon the other trial, after comparing these signatures with the standards in evidence, he had pronounced them genuine and had sworn that all were written by the same hand. Each of the papers when unfolded was a total blank and the signatures were obviously spurious. The witness was thus compelled to admit that he had been mistaken in his opinion as an expert upon the previous trial, in relation to the signature of the decedent and had testified that the spurious signatures were genuine.

After this witness had left the stand another expert was called by the plaintiff who, also testifying by comparison, stated that the signatures to the notes were genuine. Upon cross-examination an effort was made by the defendant's counsel to show that he had made the same mistake upon the previous trial as Mr. Reed. For this purpose he was shown the two papers, folded so as to expose only the spurious signatures, and was asked if he remembered that these signatures had been shown him on the former trial. The counsel for the plaintiff objected to "showing the witness any papers which are not in evidence." The court thereupon said: "The objection is sustained. I think it is incompetent. On reflec-

tion I will strike it out. I will strike out the testimony of the other witness, the testimony in regard to these two papers which has been given by Mr. Reed. (To the jury) I will strike it out and you will pay no attention to it." The defendants' counsel duly excepted and thereupon asked: "Do you not remember that you testified before Judge Jenks, when the papers that I now show you were presented, that in your opinion the same hand wrote the words 'Hester Hoag' before the seals on those papers that wrote the words 'Hester Hoag' upon the endorsement upon the checks." This was objected to as incompetent and immaterial, "and especially that these papers are not in evidence." The objection was sustained and the defendants, after duly excepting, offered the papers in evidence "to obviate that objection." This was objected to "on the ground that they have not been proven so as to be admitted as standards of comparison, and the papers themselves are wholly immaterial." The objection was sustained and the defendants excepted. Afterward the same rulings in substance were made when the third expert of the plaintiff was upon the stand, and similar exceptions were taken.

The opinions of experts upon handwriting, who testify from comparison only, are regarded by the courts as of uncertain value, because in so many cases where such evidence is received witnesses of equal honesty, intelligence and experience reach conclusions not only diametrically opposite, but always in favor of the party who called them. The right to cross-examine such witnesses is of great importance, and, while it should be confined within reasonable limits, it should not be so restricted as to deprive it of all value. The trial judge has a wide discretion in controlling the cross-examination of witnesses in order to save time, but after the time has been consumed and the evidence received, it can be stricken out only as a matter of right and not as a matter of discretion. If it is immaterial or incompetent it may be struck from the record for that reason, but the court has no right to strike it out in the exercise of a supposed discretionary power.

The evidence stricken out in this case was not only compe-

tent and material, but was of decided value, and might have turned the scale toward the defendants upon an issue so closely contested. It tended to cast doubt upon the credibility of the witness and his skill as an expert. It suggested the question whether, if the witness was at fault as to the spurious signatures, he was not at fault as to the signatures in question. It made a direct attack upon the value of his opinion, and tended to show that it was unreliable. The defendants were deprived of the right to test, in an effective and practical manner, the accuracy and worth of the opinions of the three experts relied upon by the plaintiff. A similar method was employed by the plaintiff in his effort to discredit an expert called by the defendants, but no objection was interposed. The maxim *falsus in uno falsus in omnibus* applies, but with less force, to the statements of a witness which, although not intentionally false, are in fact untrue, especially when they involve matters of judgment and skill. Each witness was asked in substance, " Did you not on another trial swear that these bogus signatures were genuine?". What better test could be applied? The effort was to show, not that the witness had been mistaken as to the signature of some third person, or even as to some signature of the decedent not in evidence, but with reference to the very signatures which were then the subject of investigation, for by confounding the spurious with the genuine he demonstrated that he could not tell one from the other. One witness virtually confessed his error, so that there was no necessity for contradiction as to him, and the other two might have been forced into the same situation if the trial judge had not intervened.

Owing to the dangerous nature of expert evidence and the necessity of testing it in the most thorough manner in order to prevent injustice, we are disposed to go farther and to hold that where a witness makes a mistake in his effort to distinguish spurious from genuine signatures and he does not acknowledge his error, it may be shown by other testimony. The test sought to be applied in this case was one of the most practical and conclusive that can be employed

to determine whether the witness is really an expert or not. It bears not only upon his competency to express an opinion, but upon the value of his opinion when expressed. Those of us who formerly sat in the Supreme Court allowed it without hesitation at our circuits, and we unite in saying that it was of material aid in weighing the testimony of witnesses upon handwriting. The first question usually put to such a witness is in substance, though not in form, "Are you an expert?" and his answer even if sufficient, *prima facie*, to qualify him to express an opinion, should not be accepted as conclusive, but evidence upon the incidental issue as to his qualifications to express an opinion, should, within reasonable limits, be received. While the court may properly restrict such evidence, it should not exclude it altogether. The good sense of the trial judge will confine it within proper bounds and prevent an unnecessary consumption of time. It is better to take a little time to see whether the opinion of the witness is worth anything, rather than to hazard life, liberty or property upon an opinion that is worth nothing. The evils and injustice arising from the use and abuse of opinion evidence in relation to handwriting are so grave, that we feel compelled to depart from our own precedents to some extent and to establish further safeguards for the protection of the public. As the hostility of witnesses to a party may be shown as an independent fact, although it protracts the trial by introducing a new issue, so, as we think, the incompetency of a professed expert may be shown in the same way and for the same reason; that is, because it demonstrates that testimony, otherwise persuasive, cannot be relied upon. (*People* v. *Brooks*, 131 N. Y. 321; *Schultz* v. *Third Avenue R. R. Co.*, 89 N. Y. 242.)

The competency of a witness under section 829 of the Code is not left to his own denial of interest in the event, as other witnesses may be called to prove that he has such a pecuniary interest in the subject of the action as to prevent him from testifying. As an interest that disqualifies may be shown, so a want of skill that disqualifies may be shown. Even in *Van*

*Wyck* v. *McIntosh* (14 N. Y. 439), which we do not follow in all respects, one of the judges said : " Facts bearing directly upon the credibility of witnesses are material to the issue, and witnesses may be cross-examined in regard to such facts, and may be contradicted, if they deny the truth, by other evidence. (*Newton* v. *Harris*, 2 Seld. 345.) Hostile feelings on the part of the witness towards the party he is called to testify against and interest in the action or question in litigation belong to this class."

Another judge, writing in the same case, said : " Undoubtedly a witness who speaks to handwriting affirms that he knows the handwriting of the party and that the particular writing is or is not his. Each branch of his testimony is material, and the one as material as the other. He may be contradicted as to his knowledge ; may be cross-examined as to how he acquired it, and may be contradicted in all the particulars on which his pretended knowledge is founded. If he bases his knowledge on having seen the party write, it might be shown that it was some other person and not the party whom he saw write ; or if his knowledge was professedly founded upon correspondence with the party, this might be proved to be erroneous or untrue." .

But, while it was held that the knowledge of the witness might be experimented upon, it was also held that the witness could not be contradicted by showing that he was mistaken as to simulated signatures which he had pronounced genuine, because it would introduce a collateral issue. Collateral issues are an evil, but they are permitted when justice requires it.

Where a witness, after leaving the stand, declares that what he has testified to was a fabrication, such declaration may be given in evidence, although it raises a collateral issue as to whether he made the declaration. (*People* v. *Moore*, 15 Wend. 420.)

So, where the opinion of an expert is given in evidence, he may be contradicted by showing that at another time he expressed a different opinion. (*Sanderson* v. *Nashua*, 44 N. H. 492.) The relations which a witness has to the case, or to

a party, threats made by him, the fact that a party tried to bribe him, the fabrication, destruction or concealment of evidence and the like, may be shown. (*Nowack* v. *Metropolitan St. Ry. Co.*, 166 N. Y. 433 ; *Matter of Snelling*, 136 N. Y. 515 ; 11 Am. & Eng. Encyc. [2d ed.] 503.)

There has been a change by legislation since the *Van Wyck* case was decided, so that writings " proved to be genuine to the satisfaction of the court," may be introduced for the purpose of comparison. (L. 1880, ch. 36 ; L. 1888, ch. 555.)

Suppose a witness should testify that a writing, not in issue, was genuine and the court should receive it for the purpose of comparison, could it not be shown by the other party that such signature was not, in fact, genuine ? Such an issue might be collateral, but is an issue as to the competency of a witness to express an opinion collateral in a vicious sense ? Is not the competency of a witness upon handwriting always a relevant fact, inasmuch as his opinion is not relevant unless he is competent to express it ? The competency of a witness is a fact necessary to be known in order to learn the value of his opinion. While it is not an issue raised by the pleadings, it becomes a subordinate issue by the tender of the witness as an expert. As the opinion may determine the main issue, the question whether the opinion is relevant, that is, whether it is the opinion of one legally qualified to give it, is necessarily an incidental issue, as otherwise, the main issue might be decided upon an irrelevant fact. It is incidental to the main issue, because it attacks the foundation of the evidence, and it may be the only evidence, received to establish the main issue. It is not enough to permit the opinion of an incompetent witness to be met by the opinion of a witness who is competent, for the jury may not be able, even when instructed by the cross-examination, to tell the good from the bad, unless they are guided by further evidence.

It is for the trial judge to decide whether the witness, by his own evidence, has qualified himself to express an opinion, but it is for the jury to decide upon all the evidence, and

under proper instructions from the court, whether he is in fact competent as an expert. If they find him incompetent, they should be told to disregard his opinion, but they cannot, in many cases, safely pass upon the question if they are limited to the evidence of the witness himself and to his own description and estimate of his qualifications. "The value of an opinion does not depend upon the skill and knowledge professed by the witness, but upon the skill and knowledge which he actually possesses, and of the accuracy of such knowledge the jury must judge." (Rogers Expert Testimony, 59.)

We think that any testimony of an alleged expert upon handwriting which bears on his competency to express an opinion, may, within reasonable limits, be contradicted by the testimony of other witnesses. We deem it our duty to limit such cases as *People* v. *Murphy* (135 N. Y. 450) and *Van Wyck* v. *McIntosh* (14 N. Y. 439) in so far as the conclusion thus announced is inconsistent with the views therein expressed.

The judgment should be reversed and a new trial granted, with costs to abide event.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.