PEOPLE ex rel. HANSEN v. WALDO, Police Com'r.

(Supreme Court, Appellate Division, Second Department. July 31, 1914.)

EVIDENCE (§ 573*)—OPINION EVIDENCE—HANDWRITING EXPERTS.

> Where proceedings were instituted to remove relator from the police force, because he was alleged to have written an anonymous letter to the commissioner of police, which he denied, and the only proof against him was the testimony of a handwriting expert, founded on a comparison of the letter and certain writings of relator, that the witness had reached an "irresistible conclusion" that the letter was written by relator, such opinion was evidence of too weak a character to sustain an order of removal.

> [Ed. Note.—For other cases, see Evidence Cent. Dig. § 2399; Dec. Dig. § 573.*]

Certiorari by the People, on the relation of Frederick Hansen, against Rhinelander Waldo, as Police Commissioner of the City of New York, to review a determination of the Commissioner dismissing relator from the police force. Writ sustained, and determination annulled.

Argued before JENKS, P. J., and BURR, CARR, RICH, and PUTNAM, JJ.

Alfred J. Talley, of New York City (Joseph A. McNamara, of New York City, on the brief), for relator.

James D. Bell, of Brooklyn (Charles J. Druhan, of Brooklyn, on the brief), for respondent.

JENKS, P. J. The relator was dismissed from the police force of the city of New York because he wrote an anonymous letter to the commissioner of police and denied it. I think that the proof of his guilt, tested by the criterion of subdivision 5 of section 2140 of the Code of Civil Procedure, is not sufficient. The direct evidence against him is the testimony of an expert on handwriting, founded on his com-

parison of the letter and certain writings of the relator, whereby the expert reached "an irresistible conclusion." I have no intention to reflect upon this expert, or to belittle him. He stands high in his calling, and is a frequent witness. But this kind of evidence is characterized by our Court of Appeals as of a dangerous nature. Hoag v. Wright, 174 N. Y. 43, 66 N. E. 579, 63 L. R. A. 163. And in Hardy v. Harbin, 154 U. S. at page 605 Appx., 14 Sup. Ct. at page 1175, 22 L. Ed. 378, Hunt, J., quotes with approval the words of Bennett, J., in Adams v. Field, 21 Vt. 256, as follows:

"Those having much experience in the trial of questions depending upon the genuineness of handwriting will not require to be reminded that there is nothing in the whole range of the law of evidence more unreliable, or where courts and juries are more liable to be imposed upon."

And in Black v. Black, 30 N. J. Eq. at page 224, Van Fleet, V. C., says:

"The opinion of experts, based on comparison alone, is evidence of low degree, and has been regarded by eminent judges much too uncertain, even when only slightly opposed, to afford a safe foundation for a judicial decision. Gurney v. Langlands, 5 Barn. & Ald. 185; Doe v. Suckermore, 5 Ad. & El. 751; 1 Greenl. Ev. § 580, note 2; Stark. Ev. 173, note 'e.'"

Mr. Moore, in his valuable work on Facts, has assembled various judicial utterances to the effect that this kind of evidence is most unsatisfactory, very inconclusive, most unreliable, and of the lowest probative force. Moore on Facts, § 615. And an eminent writer has said that:

"A jury is bound, therefore, to accept the opinion of an expert as to handwriting, even when uncontradicted, as an argument rather than a proof, and to make allowance for all the disturbing influences by which the judgment of the expert may be moved." 1 Whart. on Evidence, § 722.

And, finally, it is common knowledge that experts of the highest standing, even when most positive in their opinions, have erred. And see Moore on Facts, section 634.

The peculiar value of cross-examination of this kind of witness is recognized (Hoag v. Wright, supra, 174 N. Y. 42, 66 N. E. 571, 63 L. R. A. 163), and yet in the case at bar, by the refusal to adjourn the trial in order that the relator's counsel might attend, until after this expert was dismissed from the stand, the relator was deprived of the benefit of counsel's services in cross-examination of this witness.

The character of this letter does not indicate that the writer thereof was this relator, or was a member of the police force. It was a complaint against the conditions of certain work doing in "our neighborhood"—against the inattention of the local policemen, the difficulty of finding any of them in the neighborhood, their neglect of duty for the frequenting of groggeries, and against the sale of beer from a certain inn on Sunday. Investigation by a police lieutenant of the conditions charged revealed that this relator resided in the neighborhood, and hearsay was admitted to show that a contractor doing the work in that locality thought that the relator was inimical to him and had been the cause of telephonic complaints against him. My own comparison of the exhibits (see Luco v. U. S., 23 How. 515–541, 16 L.

Ed, 545) does not convince me of the correctness of the expert's conclusion.

On the other hand, the relator took the stand to deny that he wrote the letter or had any knowledge thereof. A paying teller of the bank wherein the relator kept his account expressed his opinion that the relator did not write the letter, and the relator's wife testified likewise. An inspector of the department of health testified that he had received two or more letters of complaint against the condition of that neighborhood, of which letters one was unsigned and another was from an existing person living in that vicinity. He refused to reveal the identity of the writer in obedience to the rule of his department, but testified that it was not the relator. The relator's counsel was refused an opportunity to bring the letters into court, and to have the expert recalled, in order that they and the letter in question might be submitted for his opinion.

It is true that there is one curious feature in the testimony of the relator. When asked by his counsel whether he wrote the letter, he answered:

"I would like to have my memorandum book."

He was then asked by his counsel to put the memorandum book down, and told to answer the question, whereupon he answered:

"I am positive, as I stated before, that I didn't, and I state again I didn't write it. Q. Well, I ask this question: Why did you ask the commissioner for your memorandum book? You didn't find your memorandum book necessary to find out whether you wrote that letter, did you?"

The Deputy Commissioner: "Just one question at a time. Why did you ask the commissioner for your memorandum book? A. Well, the book—to make me positive, but I am positive without it."

Naturally, such testimony is subject to the very criticism which the questions implied; and it permits the surmise that the relator may have written some letter at some time upon the subject. Nevertheless, upon the entire case, I think the determination should not be confirmed, and therefore I advise that the writ should be sustained, that the determination should be annulled, and the relator restored to his office, with $50 costs and disbursements. All concur.