OPINION OF THE COURT
John A. Milano, J.
ISSUE
Is a court (trier of the fact) required to accept a handwriting expert’s opinion to the exclusion of the facts and circumstances disclosed by other testimony? Is such an opinion subject to the same rules concerning credibility as the testimony of any other witness?
FACTS
This is a holdover proceeding brought by the petitioner landlord pursuant to subdivision (a) of section 53 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc., in that the respondent tenants allegedly are in violation of subdivision 6 of paragraph 20 of the lease in that the tenants are harboring and maintaining several dogs in the premises without the consent of the landlord.
A lease was entered into by the former landlord, Otto Plate and his wife, and the respondent tenant, Maria Murray and her husband, for a term of three years com *746 mencing March 1, 1981 in regard to apartment 1L, in premises 34-43 41st Street in Long Island City. The original lease (respondents’ Exhibit A) contains the four signatures of the parties at the bottom of the document and in addition alongside of subdivision 6 of paragraph 20 of the said lease, there is a signature, O. Plate, with said subdivision deleted by a line drawn across it. The deleted provision reads: “Dogs, cats or other animals or pets are not allowed in the Apartment or Building.” The original duplicate lease (petitioners’ Exhibit No. 1) contains four signatures at the bottom by the said parties, but does not contain the signature of O. Plate alongside subdivision 6 and said provision is not crossed out.
The issue here is not whether the deletion of subdivision 6 is valid if the former landlord Otto Plate signed one of the duplicate leases and not the other for whatever the reason. The issue raised is whether the said Otto Plate did in fact sign respondents’ Exhibit A next to subdivision 6. The attorney for the petitioner maintains that the signature on said document is not the genuine and authentic signature of Otto Plate and in fact, the said Otto Plate only signed the bottom of respondents’ Exhibit A and petitioners’ Exhibit No. 1 and that the purported signature is not in fact his signature at all.
At the commencement of trial, the parties stipulated on the record that the sole issue in this proceeding would be whether in fact, the disputed signature was made by the said Otto Plate. If the proof adduced at the trial constrained this court to declare that the disputed signature was made by Otto Plate, then the petition would be dismissed with prejudice insofar as the tenants would be permitted to harbor their pets, consisting of three dogs except that any nuisance in the future would still be actionable on the part of the landlord. But if the proof would show that the disputed signature was not made by the former landlord, then judgment of possession would be entered in behalf of the petitioner landlord.
TESTIMONY
Respondents called one Elias Samas as an expert, a graphoanalyst, who testified that he received a mail order *747 degree (certificate of graphoanalyst) from the Chicago Institutional Grapho-Analysis Society; that he was also a psychotherapist, receiving his Masters at Columbia University; that he attended a basic course on the subject of gráphoanalysis in New York, for about eight weeks, twice a week for two hours at a time; that he works for New York State as a psychologist and maintains a temporary office for psychotherapy; that the art or science of graphoanalysis concerns a study and analysis of handwriting strokes and letter formations; that he prepared extensive reports of handwriting analysis totaling about 100 in the last five years and rendered hundreds of sample reports; and that he had not testified in court before this proceeding.
By projection on a screen in the courtroom, the expert witness began to compare the various signatures on the various documents including the disputed signatures and the conceded authentic ones. The expert designated the letter of Otto Plate (Jan. 19, 1978) and his undisputed signature (respondents’ Exhibit B) to be Exhibit No. 1A; the tenants’ lease with the undisputed signatures at the bottom (respondents’ Exhibit A) to be Exhibit No. 2A; the letter of February 25, 1978 with the disputed signature (respondent’s Exhibit C) to be Exhibit No. IB and the disputed signature alongside subdivision 6 of the tenants’ lease (respondents’ Exhibit A) to be Exhibit No. 2B. Petitioners’ Exhibit No.l which contained the undisputed signatures at the bottom but no signature alongside subdivision 6, was not compared at this time by the expert. The expert testified as to the comparisons he had made of the signatures in his Exhibit Nos. 1A, 2A, IB and 2B. He testified as to the “O”, that there was a break in the line; that the “T” bar ends in a hook which bends downward; he discussed the thickness of the “T” bar and the dot after the small “e” and his assertion that it had a horizontal dash after it. He commented that the loop of the “P” did not cross; that the small letter “1” had a loop. He testified that by making comparisons of these identifying characteristics, that the cumulative similarities he found would in all probability point to the conclusion that the compared signatures were made by one and the same person.
*748 The petitioners’ attorney then showed the witness petitioners’ Exhibit No. 1 (previously uncompared by the witness) which was the lease which was signed only at the bottom by the four parties including Otto Plate. The witness was asked to make an on-the-spot comparison and analysis of the signature of Otto Plate on this document with the disputed signatures (expert’s Exhibit Nos. IB and 2B and marked by the court as respondents’ Exhibits C and A). The witness stated he could not and that he would need “hours” to make a comparison and to give a conclusion and that he was unable to do it now here in court with a signature he had never seen before even though unquestionably this was the authentic signature of Otto Plate. Objection of the respondents was sustained as to continuing with this inquiry where the expert’s answer was that he could not render an opinion in regard to the similarity and dissimilarity of this signature of Otto Plate and the disputed signatures as well as the other conceded and authentic signatures contained in the other documents. But when questioned further, as to his conclusion in regard to the disputed signatures and the signatures of Otto Plate on the other said documents, he testified that he was “positive” that they were made by one and the same person and that there was no possibility whatsoever that any other conclusion could be reached.
Maria Murray, the respondent tenant, then testified, stating that the said Otto Plate had signed the disputed signature (expert’s Exhibit No. 2B, respondents’ Exhibit A in evidence) in her apartment and had approved striking out subdivision 6 of paragraph 20 in regard to the prohibition of dogs, cats or other animals or pets on the said premises. But there were gaps in her testimony and she could not recall how the said provision had been deleted by drawing a line through it.
Petitioner landlord introduced one witness, the said former landlord, Otto Plate. He stated that in regard to respondents’ Exhibit A in evidence, he had signed his name at the bottom but that the signature next to the said subdivision 6 in the middle of the page at the left, was not his signature and that he had not signed same. He further stated that the said lease was signed in the hall of the *749 premises and not in the apartment as Maria Murray had testified and that he gave the lease to Maria Murray’s husband through the window and that he had kept the lease for about one week. He also stated that he knew the tenants had animals and he personally did not mind it, but he was most emphatic that the signature which the tenants claim was his alongside subdivision 6 had not been made by him. This statement against his interest and his general candor impressed this court, which takes notice of the fact that the lease contains a “no waiver provision”, and that this court was asked to make a determination based on the limited issue by stipulation on the record hereinbefore stated.
THE LAW
Expert opinion evidence is admissible to prove handwriting. The expert bases his opinion not on personal knowledge but on a comparison of genuine and disputed writings. CPLR 4536 provides, “Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the handwriting of the person claimed to have made the disputed writing shall be permitted.” The writing offered as a standard of comparison must either be conceded to be genuine or proof of its genuineness must be made by common-law evidence. (See People v Molineux, 168 NY 264.) Only an expert may express an opinion as to handwriting based upon a comparison between the disputed writing and the writing conceded or proved to the satisfaction of the court to be the genuine handwriting of the person whose handwriting is in dispute. The nonexpert witness is not competent to make the comparison although the jury (court as trier of the fact and law) may do so. (McKay v Lasher, 42 Hun 270; 7 Wigmore, Evidence [Chadbourn rev ed], § 1997; Miles v Loomis, 75 NY 288.)
The competency of an expert witness who has expressed an opinion based on a comparison of writings may be tested on cross-examination by submitting other specimens of handwriting to the witness and asking him to compare them with the standard in evidence and to state whether they are in the same handwriting. (Hoag v Wright, 174 NY 36.) An expert’s testimony is, however, merely part of the proof to be considered by the trier of fact. (Roberts v State of *750 New York, 34 AD2d 1071.) The court may reject an expert’s opinion if it finds the facts to be different from those which formed the basis for the opinion. The court may also reject his opinion, if after careful consideration of all the evidence in the case, expert and other, it disagrees with the opinion. In other words, the court is not required to accept an expert’s opinion to the exclusion of the facts and circumstances disclosed by other testimony and/or the facts disclosed on cross-examination of the expert witness. Such an opinion is subject to the same rules concerning reliability and credibility as the testimony of any other witness and such testimony is not controlling upon the judgment of the court. (Ensign v New York Life Ins. Co., 204 App Div 690; Lubbee v Hilgert, 135 App Div 277; see Ann., 86 ALR2d 1038; Hoag v Wright, 174 NY 36, 47, supra; see, also, Matter of Sylvestri, 44 NY2d 260; Commercial Cas. Ins. Co. v Roman, 269 NY 451.)
FINDINGS
This court has very carefully and deliberately reviewed the testimony of the former landlord, Otto Plate, the tenant Maria Murray and the testimony of the expert witness, as well as all of the documents in which there appears the disputed writings and the conceded standards of handwriting of the said Otto Plate. The court submits that the testimony of the two witnesses, Otto Plate and Maria Murray, are diametrically opposite in fact, thrust and conclusion. But in carefully weighing the testimony and candid demeanor of both witnesses, this court concludes that the credibility of Otto Plate was not nullified or compromised by the testimony of the tenant Maria Murray and the court is of the belief that the witness Otto Plate gave a truthful and accurate version of the facts stated. This being the case, and the court having rejected the testimony of Maria Murray, does the testimony of the expert witness, in behalf of the tenants, sustain their burden of proof? The court answers that question in the negative for the following reasons: though qualified by this court as an expert on the art and science of graphoanalysis, nevertheless, the weight to be given his testimony must be tempered by the fact that the witness is not forensic in his science or art, not having given testimony in court before; *751 was not willing to concede a measure of probability in regard to whether the said disputed signature was the same as the standard but in fact stated that he was positive in his opinion; that the witness took a mail order course in the science of graphoanalysis though the court notes he later attended personally a course as before stated. But when asked, on cross-examination to give an opinion of a handwriting specimen contained in petitioners’ Exhibit No. 1 in evidence, the witness stated he could not make such a comparison or give an opinion without taking “hours” to study the said specimen. The court concludes that the “weight” of the expert’s prior opinions in regard to the disputed signatures was severely affected by the refusal or inability of this witness to make such a comparison on cross-examination. This court on the basis of the conclusions reached hereinabove could reject the testimony of this witness despite his opinions expressed in court when weighed against the testimony of Otto Plate. But this court • goes further and disagrees with his opinion because the court believes that the facts are different from those which formed the basis for the opinion. A comparison by this court (the trier of the fact and law) of the disputed signatures and conceded standards leads the court to conclude that the disputed signature (respondents’ Exhibit A in evidence) was not signed by the said Otto Plate and that the conceded standards are not the same as the said disputed signature. In comparing same, the court concludes that the “O” in the two disputed signatures (respondents’ Exhibits A and C in evidence) are basically vertical while the “0” in the conceded standards (respondents’ Exhibits A and B in evidence) are basically slanted, to the right. The “P’s” in the disputed signatures are made with no breaks while the “P’s” in the standards are double looped. The small “a” in both of the disputed are similar but the “a’s” in the standards have breaks in them, and are not similar to the disputed specimen. The small “t” in the disputed are crossed in the same manner and in same thickness and appears to be the same while the small “t” in the standards are both looped and similarly crossed and are not similar to the disputed letters. The break in the “o” of the disputed and standard specimens are dissimilar. One interesting *752 observation is made by this court. The disputed signature in document (respondents’ Exhibit C) and the disputed signature in document (respondents’ Exhibit A) are strikingly similar to each other. This court thus concludes that the facts upon which the expert based his opinion in his testimony before the court are different and in conflict and therefore the court rejects his testimony in its entirety.
CONCLUSION
Accordingly, the court finds that the petitioner landlord has sustained his burden of proof and grants final judgment of possession to the said landlord with use and occupancy at the prevailing rate. However, because of the disability of the tenant husband, Charles Murray, and the problems resulting in the removal and placement of three dogs, this court stays the issuance of the warrant of eviction to May 30, 1982 on condition that if the tenants remove all of their pets and/or dogs from the premises prior to May 30,1982, then this judgment shall be rendered null and void.