(127 App. Div. 604.)

### WILBER et ux. v. GILLESPIE et al.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. APPEAL AND ERROR—REVIEW—APPEAL FROM JUDGMENT—QUESTIONS OF LAW.
   On an appeal from the judgment alone, questions of law only are presented.

2. WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS.
   In an action on a note, brought against the executrices of the maker, in which the defendants deny the execution of the note, before delivery of the note had been proved, one of the plaintiffs was asked if at a certain time the note was in her possession. Held, that an objection to the question was properly sustained under Code Civ. Proc. § 829, as the inference to be drawn from the possession of the note is depended on for proof of delivery, which would involve proof of a personal transaction with the deceased.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 689–692.]

3. SAME.
   In an action on a note, brought against the executrices of the maker, in which the execution of the note was denied, an objection to the question, asked one of the plaintiffs. if she was familiar with the signature of the maker, was properly sustained, under Code Civ. Proc. § 829.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 689–692.]

4. APPEAL AND ERROR—OBJECTIONS NOT RAISED IN LOWER COURT.
   A ground for overruling an objection to a question asked a witness will not be considered on appeal, where it is not urged in the trial court.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1258–1280.]

5. WITNESSES—COMPETENCY—TRANSACTION WITH DECEASED PERSON.
   Under Code Civ. Proc. § 829, plaintiff, in an action on a note against the executrices of the deceased maker, in which the execution of the note is denied, cannot testify that she had seen the decedent write his name, in order to qualify her to express an opinion that the disputed note was in the handwriting of the decedent.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 689–692.]

Appeal from Trial Term.

Action by Henry Wilber and Henrietta I. Wilber, his wife, against Margaret Gillespie and Mary Luther, as executrices of the last will and testament of Benjamin Gillespie, deceased. Judgment for defendants, and plaintiffs appeal. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

W. D. McNulty (Edgar T. Brackett, of counsel), for appellants.
Rosendale & Dodd (George Rosendale, of counsel), for respondents.

CLARKE, J. This is an appeal from a judgment entered on a verdict in an action brought to recover of the defendants, as executrices of Benjamin Gillespie, deceased, the sum of $5,000 upon a note which reads as follows:

"N. Y. City, N. Y., November 27, 1901.

"$5,000. Three months after date I promise to pay to the order of Henry Wilber and wife, $5,000, value received, at Gansevoort, N. Y.

"B. Gillespie."

This note, written in lead pencil, is alleged by the defendants not to have been executed by their testator, and the question presented upon the trial was whether or not Benjamin Gillespie had signed this instrument. Upon conflicting evidence the jury decided in favor of the defendants. The appeal being from the judgment alone, questions of law only are presented. The question here raised arises out of the examination of Henrietta Wilber, one of the plaintiffs. The record appears as follows:

"Q. Are you familiar with the signature of Benjamin Gillespie (showing witness Plaintiff's Exhibit 2 for identification, being the note in question)?

"Counsel for the Defendants: I object, on the ground that the witness is incompetent to answer the question, as it involves a personal transaction between the witness and the deceased, prohibited by section 829; and I object on the further ground that the witness has not been shown to be competent or qualified to express an opinion.

"The Court: When we reach that point, you may examine her preliminarily.

"Counsel for Defendants: I merely want to get the record in proper shape.

"The Court: There is no evidence of delivery.

"Counsel for the Plaintiffs: On which question does your honor wish to hear me now?

"The Court: I will hear you on the competency of this question.

"Counsel for Plaintiffs: The witness is prohibited strictly under that rule from testifying of anything of a personal transaction which gave rise to this claim and under which this originated, but she may have gathered her information from seeing him write his name, not in connection with this claim, or anything that led up to the signing of this note.

"The Court: Objection sustained. (Exception.)

"Q. Do you recall when Benjamin Gillespie died? A. Yes, sir. Q. Was the note in your possession at that time?

"Counsel for defendants: I object, upon the ground that the witness is incompetent to answer the question, as it involves a personal transaction between the witness and the deceased, prohibited by section 829 of the Code.

"The Court: Objection sustained. (Exception.)

"Q. Is the signature on the note shown you that of Benjamin Gillespie, in your opinion?

"Counsel for Defendants: I object, upon the ground that the witness is incompetent to answer the question, as it involves a personal transaction between the witness and the deceased, prohibited by section 829 of the Code, and upon the further ground that the witness has not been qualified or shown to be competent to express an opinion.

"The Court: Objection sustained.

"Q. Other than the transaction in question here—that is, giving of the note or anything that led to the giving of this note—have you had occasion to see Benjamin Gillespie write his name, so as to familiarize yourself with his signature?

"Counsel for Defendants: I object, upon the ground that the witness is incompetent to answer the question, as it involves a personal transaction between the witness and the deceased, prohibited by section 829 of the Code.

"The Court: Objection sustained.  (Exception.)"

The objection to the question, "Was the note in your possession at that time?" was properly sustained.  Delivery of the note had not been proved.  The Court of Appeals has held that, where the inference to be drawn from the possession of an instrument is depended upon for proof of delivery, then testimony of possession necessarily involves proof of a personal transaction with the deceased, and therefore comes within the inhibition of the statute.  Clift v. Moses, 112 N. Y. 426, 20 N. E. 392; Richardson v. Emmett, 170 N. Y. 412, 63 N. E. 440.

Under ordinary circumstances the preliminary question propounded to a witness produced upon the question of handwriting, "Are you familiar with the signature of Benjamin Gillespie?" might not be considered objectionable.  But in view of what the Court of Appeals said in Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163: "The question called for an opinion, not a personal transaction, and the evidence to qualify the witness to express his opinion was not objected to"—the learned counsel for the defendants was justified in objecting in limine to any attempt to qualify the witness.  That he was aware of the decision is illustrated by his statement, "I merely want to get the record in proper shape."

It is now urged that the witness might have had sufficient knowledge to testify as to decedent's handwriting derived from sources not dependent upon personal transactions with him.  It is sufficient to say that no such question was in any way presented to the trial court.  In discussing this first objection, counsel for the plaintiffs admitting that the witness was prohibited from testifying to anything of a personal transaction which gave rise to the claim at bar, urged as his only reason for the admissibility of the evidence:

"But she may have gathered her information from seeing him write his name, not in connection with this claim, or anything that led up to the signing of this note."

And thereafter he framed the question:

"Other than the transaction in question here—that is, the giving of this note—have you had occasion to see Benjamin Gillespie write his name, so as to familiarize yourself with his signature?"

The exception to that question, as I read the record, presents squarely the only question upon this appeal, and that is:  Was the plaintiff competent to testify that she had seen the decedent write his name, in order to qualify her to express an opinion that the disputed document upon which she founded her claim was in the handwriting of the decedent?  Was testimony of previous writings in her presence testimony of personal transactions?  Section 829 of the Code of Civil Procedure provides that:

"Upon the trial of an action  *  *  *  a party or person interested in the event  *  *  *  shall not be examined as a witness in his own behalf or interest  *  *  *  against the executor, administrator or survivor of a deceased person  *  *  *  concerning a personal transaction or communication between the witness and the deceased person.  *  *  *"

Probably no section of the Code has caused more decisions. The learned counsel for the appellants urges with much force that the exclusion of evidence was error, and relies upon the following cases: Cary v. White, 59 N. Y. 336; Simmons v. Havens, 101 N. Y. 427, 5 N. E. 73; Wing v. Bliss, 55 Hun, 603, 8 N. Y. Supp. 500, affirmed on the opinion of the court below 138 N. Y. 643, 34 N. E. 513; and Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163. This precise question was not presented in Cary v. White, supra. In that case a divided court held that section 829 of the Code does not prevent a party from testifying to statements made by a deceased person to a third party; and this is so, although the witness participated in the conversation, so long as his testimony is limited to what was not personal between him and the deceased. This case was criticised and distinguished in Matter of Eysaman, 113 N. Y. 62, 20 N. E. 613, 3 L. R. A. 599, as pointed out in Hutton v. Smith, 175 N. Y. 375, 67 N. E. 633, to which I will allude hereafter.

In Simmons v. Havens, supra, a daughter sought to establish the execution and delivery of a deed by her deceased mother, who subsequently got possession of it and destroyed it. The court did say:

"Exception was also taken to the plaintiff being allowed to testify that she had the deed in her possession and that the signature was in the handwriting of her mother. She was not asked, and did not state, from whom she received the deed, and her testimony as to the handwriting or the contents of the deed did not involve a personal transaction between her and her mother. The plaintiff might have received the deed from some third person. She was also allowed to testify to. conversations between her mother and the defendant at which the witness was present; but it does not appear that she took part in the conversations, and the objections are answered by the case of Cary v. White, 59 N. Y. 336."

Of the Simmons Case the Court of Appeals said in Richardson v. Emmett, 170 N. Y., at page 417, 63 N. E., at pages 440, 441:

"During the trial plaintiff, being on the witness stand, testified without objection that Havens 'brought the deed to the house and threw it in my mother's lap, and, and, says he, "There's Helen's [the witness'] deed, and Mr. Kampoort will be down * * * and take the acknowledgment." She asked him if he had read the deed, and he said he had; that he felt interest who should have the premises back of him, and he had read the deed, and it was all right. I did not read the deed then. I saw it in my mother's possession and his.' Then came the question which was considered by the court: 'Is it the same paper that subsequently came into your possession and which you read?' Defendant objected to the evidence, but it was received, and an exception taken. 'A. Yes, sir. Q. And the same paper you exhibited to Simmons and John Thompson? A. Yes, sir.' When this court came to a consideration of the question presented by the foregoing exception, it had already, and after a careful review of the testimony, reached the conclusion that the judgment in favor of the plaintiff should be sustained, and the question actually presented was whether this ruling, under the circumstances, required a reversal of the judgment, and the reasoning of the court in effect was that no harm had resulted from permitting the witness to state that the deed was in her possession, because, as the court said, 'she was not asked and did not state from whom she received the deed. * * * The plaintiff might have received the deed from some third person.' The theory of the court was that no harm was done, and, therefore, the judgment should not be reversed; not that the testimony was competent, either to prove or to contribute toward establishing the fact of delivery. Such a holding, had it been made, would have seriously impaired the usefulness of section 829 of the Code; but it was neither made

nor was it intended, for the argument, all of which I have quoted, tended to show merely that no harm had resulted, and hence that a judgment right on the merits should not be interfered with. * * * The court was right in its view that section 829 of the Code was intended to prohibit a party covered by that section from testifying to a fact from which the inference must necessarily be drawn of a personal transaction between a testator and the witness. * * * Now, while testimony almost identical with this was said not to justify a reversal in the Simmons Case, supra, we think, for the reasons already assigned, that the decision in that case should be confined to situations precisely like the one then before the court. Such, we think, the opinion shows to have been the intention of the court in that case, and such intention is further evidenced by a decision of the court made two or three years later in Clift v. Moses, supra, in which the opinion in the Simmons Case was not discussed."

In Jones v. Reilly, 174 N. Y. 106, 66 N. E. 649, the trial court had followed Simmons v. Havens, supra, and it was urged as an authority on appeal. The Court of Appeals said:

"One of the plaintiffs was permitted to testify, against the objection of the appellants, that under section 829 of the Code of Civil Procedure he was not a competent witness to the fact that he had been paid rent for the premises up to a specified date and that no rent had been paid to him thereafter. That the plaintiff was not a competent witness to personal transactions with the deceased, Andrew Henderson, under whom the defendants claimed title, is unquestionable. The ground on which the ruling of the learned trial court seems to have proceeded was that the testimony of the witness did not necessarily imply that he had received it from the deceased. 'It might have been from somebody holding adverse possession,' said the court. This ground is entirely untenable. The only issue in the case was whether Henderson was the tenant of the plaintiff's ancestor. If the rent was paid by any one else than Henderson, it was wholly immaterial. But it is not necessary to pursue the matter further. The question is settled adversely to the respondents by our decision in Richardson v. Emmett, 170 N. Y. 412, 63 N. E. 440."

In Hutton v. Smith, 175 N. Y. 375, 67 N. E. 633, it was said:

"Now, as has been noted, Cary v. White was distinguished in the Eysaman Case, and the only authority cited in Simmons v. Havens in support of the decision made was Cary v. White; and it is clear, in the light of the other authorities in this court, to which reference has been made, that the rule laid down in that case and the earlier ones to which they have called attention was too broadly stated."

Wing v. Bliss, 55 Hun, 603, 8 N. Y. Supp. 500, depends for its authority upon Simmons v. Havens, supra. The Court of Appeals, as shown, has so criticised, distinguished, and limited that case that no discussion thereof by this court is proper.

The last case relied upon by the appellants is Hoag v. Wright, 174 N. Y. 36, 66 N. E. 579, 63 L. R. A. 163. The court said:

"After the plaintiff had testified, without objection, that he was familiar with his mother's signature, he was asked to examine the notes and state whether or not the signature to each was in his mother's handwriting. An objection was interposed, which sufficiently challenged his competency as a witness; but it was overruled, and he answered that he thought the signatures were in his mother's handwriting. The question called for an opinion, not a personal transaction, and the evidence to qualify the witness to express his opinion was not objected to."

But in the case at bar that precise evidence was objected to, and, as I read these cases, the objection was properly sustained. It seems to me, from the recent cases in the Court of Appeals, that that court

is tending more and more to a strict construction of the plain words of section 829 of the Code. The definition given in Holcomb v. Holcomb, 95 N. Y. 316, is:

"Transactions and communications embrace every variety of affairs which can form the subject of negotiations, interviews, or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition, or language of another. The statute is a beneficial one, and ought not to be limited or narrowed by construction."

In Holland v. Holland, 98 App. Div. 366, 90 N. Y. Supp. 208, McLennan, P. J., writing for a unanimous court, said:

"If the deceased had said to either of the witnesses * * * that he was going to shoot their mother, it would not be claimed that they would not be precluded by section 829 of the Code of Civil Procedure from testifying to such conversation, although it might be very cogent proof of his insanity. Such evidence would be excluded, because it was a personal communication between the deceased and the witnesses, and so, although they made no reply or took no part in the conversation. The transactions detailed by the witnesses were in effect the same. The father, instead of declaring his intention by words, fully expressed it by his acts in taking the revolver out of his pocket, pointing it toward the mother, and firing. Not only were the witnesses permitted to state what the deceased did, but they were allowed to say that he seemed excited and nervous, and that he had a wild look, all tending to establish the proposition that he at the time was insane or irrational. It is concluded that the evidence to which attention has been called was within the inhibition of the statute."

The precise evidence excluded in the case at bar was evidence of a transaction between the plaintiff and the decedent, by which the plaintiff derived impressions or information from the conduct of the decedent. The conduct was his writing his name in her presence a sufficient number of times to produce in her mind an impression or information from which, upon being shown another piece of paper, she would be qualified to testify that in her opinion it was the same handwriting with which she had familiarized herself in a transaction with him. In my opinion the evidence was properly excluded.

The judgment appealed from should therefore be affirmed, with costs to the respondents. All concur.