**THE FLORIDA NATIONAL BANK OF JACKSONVILLE, FLORIDA, etc., as Administrator of the Estate of Houston Napoleon Gardner, deceased, v. R. HAL GARDNER.**

19 So. (2nd) 5

August 1, 1944

Rehearing denied September 15, 1944

June Term, 1944

En Banc

*Ed W. Harris,* for appellant.

*Knight & Thompson,* for appellee.

PER CURIAM:

Two members of the Court, Mr. Justice BROWN and Mr. Justice ADAMS, hold the view that the decree should be affirmed because the admiinstrator could not set off against a distributee's share of the estate the amount of a note, against which the statute of limitations had run, given by the distributee to the intestate. Honorable E. C. Welch, Circuit Judge, sitting in place of Mr. Justice SEBRING, believes the decree should be affirmed, regardless of that phase of the litigation, because of Section 734.27, Florida Statutes, 1941, and F.S.A. Chief Justice BUFORD, Justices TERRELL, CHAPMAN and THOMAS are of the opinion that the decree should be reversed because neither statute applies.

Therefore, a majority having agreed to a reversal of the decree appealed from, the same is hereby reversed without opinion.

It is so ordered.

BUFORD, C. J., TERRELL, CHAPMAN, ADAMS and THOMAS, JJ., concur.

BROWN, J., and WELCH, Circuit Judge, dissent.

SEBRING, J., disqualified.

BROWN, J., dissenting:

This is an appeal from an order granting a motion to dismiss a bill of complaint filed by the appellant here as administrator against R. Hal Gardner, appellee here. The bill alleges that: Houston Napoleon Gardner died intestate at St. Petersburg, Florida, on the 31st day of January, 1941; that he left several heirs at law, one of whom is the defendant, R. Hal Gardner; that the plaintiff is the duly appointed administrator of the Estate of the deceased, Houston Napoleon Gardner; that the administrator is ready to close the estate and make distribution but cannot do so because of the fact that the defendant, R. Hal Gardner, on October 1, 1931, executed a promissory note made payable to his uncle, Houston Napoleon Gardner, which note was in the principal sum of $2082.00 and was due and payable October 1, 1933; it appears from a copy of the note attached to the bill and made a part thereof that the note was not under seal; that the defendant claims said note is barred by the Statute of Limitations and therefore demands full payment of his distributive portion of the Estate; that this bill in equity is brought because if an action on the law side of the circuit court were instituted by the administrator, the administrator could not prevail in the face of a plea that the note is barred by the Statute of Limitations, and further that R. Hal Gardner, defendant herein, is a non-resident of the State of Florida, that it would be unfair and inequitable to the other heirs of said estate for said defendant to receive a full payment of his distributive portion of the estate without in any way accounting for the indebtedness evidenced by said note; that plaintiff has no adequate remedy save in a court of equity.

The bill does not allege that the transaction between the defendant, R. Hal Gardner, and his uncle, Houston Napoleon Gardner, now deceased, constituted an advancement or that it was a gift. The bill fails to set forth any allegations with reference to the intestate's intention.

As stated, the bill shows on its face that the Statute of Limitations had run several years *prior* to the death of the intestate decedent. Apparently, the plaintiff is treating the promissory note as an asset in the hands of the adminis-

trator but wishes to enforce its collection by and through this equity court rather than by and through an action at law because as it is alleged, the defendant claims that said note is barred by the Statute of Limitations, the defendant is a non-resident, and it would be inequitable for him to receive a greater share of his uncle's estate than other heirs.

The plaintiff prays that this Court of equity receive evidence to determine the amount which is due from R. Hal Gardner to the decedent, Houston Napoleon Gardner, and his estate; that the amount so determined and fixed shall be decreed to be an equitable set-off against any amount found to be due to the defendant as an heir at law of the said decedent; that the amount found to be due and owing from the defendant to the decedent be decreed to be subtracted from and withheld from the inheritance of said defendant so that the heirs at law will receive their equitable and fair portion of the property of said decedent.

It appears that the exact question here presented has never been decided by this Court. The controlling question before us seems to be this: Can an administrator set-off a debt barred by the Statute of Limitations during the life time of the decedent, against the debtor's distributive share of the decedent's estate, when the administrator does not claim that the debt thus barred by the Statute of Limitations, constitutes an advancement?

The Florida case most nearly in point is that of Merritt v. Jenkins, 17 Fla. 593, and yet the factual situation there was quite different. In that case one of the legatees obtained money from the executor-trustee of the estate and gave a note therefor signed by herself and husband. While still owing the note the legatee was demanding payment of her legacy. In that case the Court said:

"What is here to be charged is her income, and there is nothing in the nature of the trust under the will to prevent it. That income is in the form of a legacy in the hands of the executor whom she is calling to account, and the executor has a right to retain upon the principle that a legatee or distributee is not entitled to his legacy or distributive share while he retains in his own hands a part of the fund out

of which his own and other legacies or distributive shares ought to be paid, or which are necessary to extinguish other claims on that fund. A legatee cannot withhold from the trust fund that which he owes, and at the same time have all that is coming to him. In no part of this trust estate has this legatee an interest independent of charges incurred in its management, nor has she a right to refuse to pay what she owes the estate, and at the same time have all of the money that is coming to her and that is the whole of this case as now presented. It is against conscience that she should receive anything out of the fund without deducting therefrom the amount of that fund which is already in her hands as a debtor to the estate. 2 Barb. Chy. Repts., 533; 2 P. Wms., 128; 5 Ves., 243."

Thus it will be seen that the Statute of Limitations was not involved in that case.

There is a rather exhaustive annotation, commencing at page 991 of 1 A.L.R. on the subject of the right of retainer, deduction or equitable set-off which an executor or an administrator has in respect to debts owing to the estate by persons, claiming either under a will or by virtue of the statute of descents, to participate therein, as against the debtor although claiming under him. On page 1007 of this annotation it is said:

"The cases are in conflict upon the question whether there is a right of retainer in respect of debts which have become barred by the Statute of Limitations. The weight of authority, however, is to the effect that the amount of the statute-barred debt may be applied by the executor, or administrator, in satisfaction of the debtor's legacy, or distributive share. This is upon the theory that the Statute of Limitations bars only the right of action, and not the debt itself, and therefore that, where property of the debtor comes into the hands of the creditor, the statute does not preclude his appropriating such property to the payment of the debt." (Citing a number of cases, both sustaining and denying such right of retainer.)

In addition to the cases cited in the annotation above referred to, appellant cites the case of In Re: Lindemeyer (Minn.) 235 N. W. 377, which is quoted from at some length

from an annotation in 75 A.L.R., 880; also Holmes v. Mc-Pheeters (Ind.) 49 N.E. 542 and In Re: Estate of Yeazel (Ill.) 37 N. W. (2nd) 568.

In the Indiana case cited, it is said:

"The doctrine is correctly and firmly settled in this State that a distributee is not entitled to receive his distributive share while he is indebted to the estate, and thereby retains in his own hands a part of the fund out of which his own and the shares of the other distributees, or other claims on such funds, ought to be paid. . . .

"This right is not one of set-off, but is founded on the principle that the administrator or executor has an equitable lien on the share of the distributee or legatee until the latter has discharged the obligation which he owes to the estate. . . .

"These principles, in reason, do and must apply when the recovery of the debt which the distributee owes to the estate is barred by the statute of limitation. The statute of limitation is one of repose, and is only a bar to the remedy, and not to the debt itself, simply leaving it unpaid without any legal remedy on the part of the creditor to enforce its payment by suit, in the event the debtor relies on the statute as a defense. Measured, however, by a moral standard, and one in accord with good conscience, the debtor is still under an obligation to pay his debt, although a recovery thereon under the law may be barred by the lapse of time. The statutes of this State recognize the right of a party to enforce a set-off against a cause of action, although a recovery upon the debt upon which the set-off is based is barred by limitation."

In this case, as above stated, the statute of limitation had run against appellee's note for several years before the death of the testator and it also appears from this record that the bill in this case was not filed within twelve months of the granting of letters of administration to appellant. In this connection it might be well to quote here Section 184 of the Probate Act of 1933, now Section 734.27 FS 1941, which reads as follows:

"Section 184. Suspension of Statutes of Limitations in Favor of Personal Representative.—If a person entitled to

bring an action die before the expiration of the time limited for the commencement thereof and the cause of action survive, the action may be commenced by his personal representative after such expiration and within twelve months from the granting of letters."

Under this statute the personal representative has only twelve months from the granting of letters within which to bring an action even on a cause of action against which the statute had not run at the time of the death of the person who was entitled to bring it. Does not this statute mean that after the twelve months period from the granting of letters the personal representative could not commence the action even if it had not been barred at the death of the intestate, and certainly not if the action had already been barred by the statute of limitation before the death of the intestate? We think so.

The above statute is practically the same as Section 4648 C.G.L. except that the latter statute provided that the personal representative must bring the action within six months from the issuance of letters. See in this general connection Sammis v. Wightman, 31 Fla. 10, 12 So. 562 and Inman v. Davis, 125 Fla. 298, 169 So. 741.

As to what effect should be given to a statute of limitations in a court of equity, a very able discussion thereof will be found in some of our older cases. Thus in a very learned opinion by Mr. Justice WESTCOTT in the case of Browne v. Browne, 17 Fla. 607, at page 624, it was said that:

"In cases of concurrent jurisdiction where the statute bars the limitation at law, there a court of equity, acting not by analogy, but in obedience to the statute, makes the limitation a bar to the equitable remedy equally as effective and extensive as the statute bars the remedy at law, but in cases other than those of concurrent jurisdiction . . . the statutory limitation is adopted by analogy the court of equity conforming itself to the public policy evidenced by the statute, and adopting that period as the time in which payment and satisfaction is presumed."

In the case of Fillyau v. Laberty, 3 Fla. 72, beginning at page 107, there is another very interesting and erudite dis-

cussion of this question. It was held in that case that the statute requiring the exhibition by a creditor of his debt or demand within two years from the time of the granting of letters testamentary or of administration, was as obligatory in a court of chancery as at law. In the opinion we find this statement:

"The books furnish no case in which a court of equity has ever felt at liberty to dispense with the operation of the statute against a legal demand, unless there has been some extrinsic equity to authorize it."

In the case of Erickson v. Ins. Co. of North America, 66 Fla. 154, 63 So. 716, this Court, speaking through Mr. Justice WHITFIELD, said:

"Where the face of a bill in chancery shows a case barred by the statute of limitations, and no circumstances are stated which take the case out of the operation of the act, the defendant may take advtantge of it by demurrer. Sees v. Smith, 55 Fla. 642, 46 South Rep. 173."

The same principle was adhered to in Gillespie v. Florida Mortgage and Investment Co., 96 Fla. 35, 117 So. 708.

In the case of Hayes v. Belleaire Development Co., 120 Fla. 326, 162 So. 698, it was held that, in the application of the doctrine of laches, courts of equity, while not bound by statutes of limitations, usually act or refuse to act on the basis of the provisions of such statutes which relate to actions at law of like character; citing Fillyau v. Laberty and Erickson v. Ins. Co. supra.

It thus appears that while courts of equity usually proceed on the theory of laches, statutes of limitation will be given effect by way of analogy unless the equitable considerations found by the facts of the case require otherwise. This is in keeping with the old equity maxim that: "Equity follows the law."

In addition to the strong implications of Section 184 of the Probate Act, hereinabove quoted, we are of the opinion that the decree of the court below dismissing the bill in this case should be affirmed in view of the reasons contained in the able opinion rendered by the chancellor below in connec-

tion with the decree, which strongly support the implications of the statute, and part of which we quote as follows:

"In most jurisdictions where it is held that the right of retainer cannot be claimed by the executor or administrator against the debtor legatee or distributee, such ruling is predicated upon the ground that to rule otherwise would amount to nullification of the Statute of Limitations or the rights which should be secured thereunder and thereby. This Court offers the suggestion that in some special instances, the equitable doctrine of laches might be destroyed. It is doubtful whether it can be definitely determined that there is a weight of authority on the question presented in this case, where the statute barred debt became barred during the lifetime and several years *before* the death of decedent. However, it has been held that the right to retain exists as well where the indebtedness became barred during the lifetime of the creditor as where it has become barred subsequently to his death.

"In reading the several cases upon this subject, it is interesting to note that learned jurists use the family relationship as a predicate for exactly opposite conclusions. Some courts, which uphold the right of retainer, theorize that since most of these cases grow out of transactions between blood kindred, that this relationship should be considered and it is reasoned by such courts that because of this family connection, the creditor would be loath to institute legal action against his kinsman. It is therefore assumed that he did not act to enforce the debt or keep it alive because of this natural hesitancy and therefore he, or his personal representative upon his death, is excused for having failed to have curtailed or avoided the running of the Statute. On the other hand, equally able jurists have made mention of the fact that these cases often grow out of transactions between blood kindred and they in theorizing reach the conclusion that blood relatives are apt, because of such relationship, to forgive a debt rather than enforce it and thereupon state that the failure upon the part of the creditor to act during his lifetime gives rise to the presumption that the debt was intentionally forgiven.

"Wholly aside from various rulings in the different foreign jurisdictions, this Court is of the opinion that in most every suit, particularly in equity, the facts make the law. It has been wisely stated that from the facts the law arises. In line with this thought it may be well to again quote from the case of Amos v. Campbell, supra, wherein the Supreme Court of Florida said, 'The maxim, vigilantibus non dormientibus jura subveniunt, is founded upon considerations of public policy, and on enlarged views of right and justice, and is to be highly commended when properly applied. But, as is well remarked in the case of Trescott v. Long, (2 Vesy, Jr., 620) 'Each case depends upon its circumstances and the discretion of the Court.'" It may be again appropriately remarked that this is not a case in which laches is attributable to the administrator, but on the contrary is directly chargeable against the creditor, who, during his lifetime, had it within his power to have avoided this situation by any one of several methods. Here we have the decedent creditor, durante vita, permitting his nephew to become indebted to him. Thereafter he did nothing to enforce the debt, allowed the Statute of Limitations to run and though he lived several years after the period prescribed in the statute had run, he failed to evidence in writing, by will or otherwise, any intention with reference to his attitude toward this indebtedness. He certainly was presumed to have known the law. He therefore, presumptively at least, knew of the existence of the Statute of Limitations and likewise knew that he, as well as every other man, had the power and right to dispose of his property, including this asset, by testamentary disposition. He could have written clearly into a will, or otherwise set forth in some independent writing, his intention with reference to this debt. His failure to make a will or other written expression of intention is a strong indication of payment or of forgiveness. Particularly is this true when it is considered that he knew the debt had become barred prior to his death; that the Statutes of Limitations originated by virtue of presumption of payment which arises when no action is taken after a long passage of time and during which period the debtor may have lost or destroyed the evidence

of payment (in fact, in England, pleas of limitation were invoked and upheld long before the existence of the Statute of Limitation, 21 Jas. 1, Chapter 16, which was the first comprehensive enactment upon the subject); that if he should die intestate, his estate would descend according to the statute of descent and distribution. It may be argued that he knew what appears to be the weight of authority on this subject and presumed that this debt would be deducted from his nephew's share of his estate. This reasoning admits of some doubt, but if he did have such belief and presumption, he knew or should have known that the authorities are not in accord and that the Supreme Court of Florida had never spoken on the subject. The fact remains, and this is the point sought to be illustrated, that he had an opportunity to clarify the entire matter and failed to utilize it in the face of knowledge on his part that the debt had become outlawed. Why then should the presumption just above set forth have any greater persuasive power than, or as great as, the presumption of payment and satisfaction or of forgiveness? Moreover, a declaration of intention on the part of the creditor, by will or otherwise, would have permitted the creditor to have avoided any *embarassment during his lifetime,* (which some courts assume would naturally be attendant upon any court action or other move on the part of the creditor against his relative to enforce or keep alive the debt) and ultimately would have assured the enforcement and collection of the debt. All of which appeals to this Court as a demonstration of the fallacy of the logic and reasoning of those courts which set forth a contrary view upon this subject.

"The fact that the decedent creditor permitted the statute to run during his lifetime, coupled with his failure to exercise his testamentary privilege, and in view also of the close blood relationship which the debtor bore to him, causes this Court to conclude that it was his intention to and he did forgive the debt or that it was in the beginning actually a gift and a debt in form only. All courts seem to agree that in construing a will, the Court should look to the instrument itself and, if necessary, to other competent evidence and glean, if possible,

the true intent of the testator. It seems appropriate that in a case like the instant case the Court should gather, if possible, from all the surrounding circumstances and reasonable deductions appropriately made therefrom, the intention of the decedent creditor. The doctrine of laches is particularly subject to invocation where, as under these facts, death has sealed the lips of one of the parties to the transaction and our statute, Section 90.05, Florida Statutes of 1941, precludes the debtor from testifying with respect to "any transaction or communication" between him and the decedent. Moreover, the administrator, the present personal representative of the decedent's estate, should be no more exempt from the statute or from laches attributable to the creditor during his lifetime than the creditor was or, if he were living, would be now. The creditor did not speak when he should have spoken and the administrator should have no different or greater right to speak for him or enforce the debt now than the creditor himself had during his lifetime. But it may be said that such holding would work a hardship or an inequity upon other heirs. The simple answer to such argument is that the creditor had a right to prefer any relative over others and under the facts in this case, the Court concludes that that is exactly what he at some time determined to and did do. Otherwise, as aforestated, he would certainly have done something toward keeping the obligation alive or would have expressed an intention contrary to the presumption of forgiveness or of payment and satisfaction."

For the reasons above pointed out, I think the decree appealed from should be affirmed.

WELCH, Circuit Judge concurs specially.

WELCH, Circuit Judge concurring specially with Justice BROWN:

I believe the right of retainer exists in favor of the administrator regardless of whether the statute of limitations had run against the note or not, (the limitation being a bar to the remedy only, and not to the debt itself), but in view of Section 734.27 Florida Statutes 1941 I think it would be contrary to public policy to allow an administrator or executor to maintain a suit of this character after the expiration

of the time limit set out in said Section. The purpose of this statute being to expedite the winding up of estates, the payment of debts and the distribution of assets among those entitled thereto without unnecessary delay.

I therefore concur in the judgment affirming the decree dismissing the bill.