177 So.2d 497 (1965)
William R. MATTHEWS, Administrator of the Estate of Elizabeth Charity Matthews, Deceased, Appellant,
v.
Olive M. MATTHEWS and Soft Water Laundry, Inc., a Florida Corporation, Appellees.
No. 4164.
District Court of Appeal of Florida. Second District.
July 9, 1965.
Rehearing Denied August 10, 1965.
*499 Leonard Lubin, of Lubin & Samuels, St. Petersburg, for appellant.
S.E. Simmons, of Bussey, Simmons & Owen, and Sam H. Mann, Jr., of Harrison, Mann & Rowe, St. Petersburg, for appellees.
SHANNON, Acting Chief Judge.
William R. Matthews, as Administrator, the appellant, was plaintiff below, and Olive M. Matthews and Soft Water Laundry, Inc., appellees, were the defendants. One phase of this case has been in this court previously, Matthews v. Matthews, Fla.App. 1960, 122 So.2d 571.
The plaintiff filed his amended complaint against the defendants alleging certain fraudulent transactions on the part of Olive M. Matthews, alleging generally that she fraudulently transferred to herself two of the eighty-four outstanding shares of stock in Alliance Investment Corporation; that these two shares of stock were owned by the decedent, Elizabeth Charity Matthews (referred to as Charity Matthews) at her death; that said defendant fraudulently transferred real and personal assets of $1,000,000.00 from the now dissolved Alliance Corporation to herself and the defendant, Soft Water Laundry, Inc., she being the majority stockholder in the said Soft Water Laundry, Inc.; that at no time was the decedent or her estate paid any consideration in exchange for such assets and/or corporate stock, but that after the death of the decedent the records of said Alliance Corporation were altered, changed and forged; that the name of the decedent upon said records as owner of two shares of stock was removed by Olive Matthews and placed in her name and that said shares of stock were in fact transferred by her after the death of the decedent.
In answer, the defendants denied all fraudulent actions, admitted that the decedent owned the stock certificate for two shares of stock, but denied that the same was fraudulently transferred to the defendant, Olive Matthews, and asserted that the transfer was proper. The answer further denied that the records of Alliance Corporation were altered and alleged that they were *500 genuine and asserted that the transfer of the stock certificate was not made after the death of decedent.
Alliance Corporation was a close corporation chartered in 1926, principally owned and controlled by members of the Matthews family. Olive Matthews, daughter of the decedent, Charity Matthews, kept the corporate books and records and was the principal stockholder of the corporation. Charity Matthews died in 1947 and in July, 1958, her administrator, who had been appointed in December, 1957, brought this suit against Olive Matthews and her controlled corporation, Soft Water Laundry, Inc., for fraudulent conversion of the two shares of stock, seeking an accounting and other relief. The shares, which were issued to the decedent in 1935, were alleged to have been fraudulently transferred by the defendant to herself in 1953. The stock certificate had been endorsed in blank by the decedent and it was alleged that Olive Matthews, fraudulently and without authority, inserted her name on the certificate as assignee after Charity Matthews died, and also made certain alterations of the corporate books to cover the fraud. Defendant Olive Matthews was adjudged incompetent and is represented in this case by her guardian ad litem. The chancellor, after taking testimony in this case, granted the defendants' motion to dismiss in an order stating that the plaintiff failed to sustain the material allegations of his amended complaint, and he therefore dismissed the cause with prejudice. It is from this order that the administrator of the estate appeals.
Appellant challenges the rulings of the lower court which excluded opinion testimony as to the decedent's purported handwriting by her son, Gerald Matthews, and daughter-in-law, Odelite Matthews. Appellant further questions the chancellor's conclusion that the material allegations of the complaint were not sustained, and finally, appellant argues that the taxation of costs against him in the lower court was improper.
Before the above points are reached we must decide whether to grant the appellant's motion to strike the first point in the appellees' brief which argues that the chancellor should be affirmed because the suit is barred by limitations of laches. As a predicate to determining this question we observe that in the lower court the appellees moved to dismiss after the close of the appellant's case. The grounds of this motion were: 1) the evidence was insufficient to support the allegations; and 2) the suit was barred by limitations and laches. The chancellor granted the motion on the ground of insufficient evidence but made no express ruling on the issue of limitations. Counsel for appellees had asked the court for a ruling on that point, to which request the chancellor replied that he was "strongly persuaded" by the laches argument. When appeal was taken from the chancellor's order dismissing the cause, the appellees filed no cross-assignments of error directed to the failure of the chancellor to also grant the motion on the ground of laches.
The appellant's motion to strike the appellees' argument on laches in this court states that since the chancellor did not expressly rule on the point in the court below, it cannot be argued on appeal, and further, that if the chancellor's failure to rule was in effect a denial of the motion on the ground of laches, the appellees are precluded from raising the point in their brief here without having filed cross-assignments of error.
The appellate rule pertaining to this matter is Florida Appellate Rule 3.5, subd. b, 31 F.S.A., which provides that the appellee may file cross-assignments of error "if he desires review on any adverse, ruling" (Emphasis added.) There was no "adverse ruling" by the chancellor on the laches issue, therefore a cross-assignment of error would not have been appropriate. In addition, it has been recognized that cross-assignments are not indispensable for appellate review of rulings adverse to the *501 appellee in the lower court, especially in chancery cases. City of Miami v. Lehman, Fla.App.3, 1961, 134 So.2d 527, 529, n. 7. Appellee could, however, argue the ground of laches in support of the chancellor's order because of the established rule in this state that a correct decision can be supported on grounds other than those assigned by the lower court. Escarra v. Winn Dixie Stores, Inc., Fla. 1961, 131 So.2d 483; Jaffe v. Endure-A-Life Time Awning Sales, Inc., Fla. 1957, 98 So.2d 77; City of Miami Beach v. 8701 Collins Ave., Inc., Fla. 1954, 77 So.2d 428; and Cottages, Miami Beach, Inc. v. Wegman, Fla. 1951, 57 So.2d 439. Therefore we hold that appellees may properly argue the defense of laches here, and consequently deny appellant's motion to strike.
In determining the merits of appellees' contention regarding laches, it is necessary to point out that this is an equity proceeding in which a statute of limitations is not controlling but it may be looked to for purposes of analogy and guidance. See Florida National Bank v. Gardner, 1944, 154 Fla. 801, 19 So.2d 5; Browne v. Browne, 1880, 17 Fla. 607.
In the present case, appellees contend that suit is barred because the alleged fraud was discovered in 1953, while this action was not filed until five years later in 1958. The statute of limitations for fraud is three years from "the discovery by the aggrieved party of the facts constituting the fraud." Fla. Stat., Sec. 95.11 (5) (d), F.S.A. We agree with the appellees that Defendant Olive Matthews' absence from the state since 1955 did not toll the running of the statute of limitations because 1) she was amenable to substituted service of process, as this court previously held in Matthews v. Matthews, Fla.App.2, 1960, 122 So.2d 571; and 2) in a similar fact situation involving substituted service under the non-resident motorist statute the Third District has held that if a defendant can be served with process, either actual or substituted, the statute of limitations is not tolled by a defendant's absence from the state. Dibble v. Jensen, Fla.App.3, 1961, 129 So.2d 162. See 16 Miami L.Rev., 591, 602. Cf. Klosenski v. Flaherty, Fla. 1959, 116 So.2d 767, 82 A.L.R.2d 664 and Fla.R.Civ.P. 1.2, 30 F.S.A.
However, the lack of a personal representative capable of suing on behalf of the decedent, Charity Matthews, does impose an impediment to the running of the statute of limitations.
The decedent, Charity Matthews, died in 1947 but letters of administration were not issued until December, 1957. This suit was filed in July, 1958. Under the provisions of Fla. Stat., Sec. 734.27, F.S.A., a personal representative has twelve months from the granting of letters to bring suit on a cause of action which survives the death of a decedent even if the time otherwise provided for the commencement of such an action has expired. This section of the statute provides as follows:
"If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof and the cause of action survives, the action may be commenced by his personal representative after such expiration and within twelve months from the granting of letters." (Emphasis added.)
This statute does not precisely cover the situation here, however, because the cause of action for fraud accrued in favor of the estate after the decedent's death rather than in favor of the decedent herself. The situation contemplated by the statute and that posed here are analogous, because the unstated premise of the statute is that until a personal representative is appointed no one has the right to bring suit on behalf of the decedent's estate. This becomes apparent when we consider that Fla. Stat., Sec. 733.01(1), F.S.A., vests in the personal representative of the decedent title to all the decedent's personal *502 property. The impact of this statute on the problem of limitations is stated in 1 Redfearn, Wills and Administration of Estates, Sec. 289:
"Since the title to the personalty is vested in the personal representative, he has the right to bring suits in behalf of the estate with reference thereto. If there is no personal representative, then one must be appointed before suit can be instituted to recover personalty belonging to the estate or to obtain judgment on any indebtedness due the estate." (Emphasis added.)
The Florida Supreme Court impliedly recognized the significance of lack of a personal representative by stating, with reference to the general limitations statute: "A cause of action cannot be said to have accrued, within the meaning of that statute, until an action can be instituted thereon. There must be some person capable of suing or being sued upon the claim in order for the statute to begin to run." Berger v. Jackson, 1945, 156 Fla. 251, 259, and 23 So.2d 265, 269.
In Connelly v. Fla. Nat'l Bank, Fla. App.2, 1960, 120 So.2d 647, this court held that an administrator c.t.a., d.b.n., was not barred by the statute of limitations from enforcing a claim in favor of the estate for fraud when more than three years had elapsed since the fraud occurred. The court, in that case, upheld the trial court's finding that the bar of the statute of limitations was not available since the administrator c.t.a., d.b.n., had been appointed less than three years prior to the filing of the suit. This position also accords with the general rule announced in 54 C.J.S. Limitations of Actions § 243, which states:
"Although there is some authority to the contrary, the general rule is that, where a right of action accrues after the death of the person entitled to sue, limitations will not begin to run until administration is taken out on his estate or until probate of the will and the qualification of an executor, for the reason that until then there is no one in existence who is authorized to sue."
See also the annotation in 74 A.L.R. 837.
Closely analogous to the present case is Hewitt v. Biege, 1958, 183 Kan. 352, 327 P.2d 872. That was an action by the executors of a woman's estate against her surviving husband for fraudulent conversion. The decedent died on July 13, 1954, and one day later the husband forged the decedent's name on certain checks and deposited them in his own account. Executors were appointed on October 7, 1954, but did not bring an action to recover the amount of the checks until September 12, 1956. The trial court found for the estate and on appeal the judgment was affirmed, even though the defendant husband argued that the two year statute of limitations had run out before the suit was brought. The court in affirming the trial court held that even though the cause of action accrued in 1954 the statute of limitations did not begin to run until the executor was appointed in October, 1954, and hence the suit was filed within two years of the latter date.
We conclude that the law in Florida accords with that expressed in Hewitt, supra, 327 P.2d at 877, that: "* * * [W]here a cause of action does not accrue until after the death of one of the parties, the limitations will not begin to run on the claim of the estate of the deceased person until an administrator or executor authorized to collect or enforce payment of the claim has been appointed." Accordingly, the suit on behalf of the Estate of Charity Matthews was not within the proscription of the three year statute of limitations for fraud. In addition, it was brought within twelve months after the issuance of letters of administration as required by Fla. Stat., Sec. 734.27, F.S.A., for actions accruing in favor of a decedent *503 prior to his death, even though that statute does not govern in this case.
Turning now to the equitable considerations relative to laches in the present suit, we find that this defense presumably could be raised against the heirs for failure to petition for appointment of an administrator during the time between the fraud in 1953 and the eventual issuance of letters in 1957. There does not seem to be any testimony as to why there was this delay or why no administration was taken upon the decedent's death in 1947, except that the heirs at that time believed there were no assets in the estate. The general rule is that passage of time in and by itself does not constitute laches, 21 Fla.Jur., Limitations of Actions, Sec. 95, and therefore we find insufficient evidence of other factors which would warrant a decision that laches did exist.
In summary, we hold that the statute of limitations was not an effective bar to this suit and further that we have no basis on which to find laches.
We now take up appellant's points relative to the admissibility and sufficiency of the evidence. The first and most decisive question is whether the court erred in holding Gerald Matthews, who was the son of the decedent, Charity Matthews, and an heir to her estate, incompetent to identify her handwriting. During the hearing in the lower court the appellees objected to this witness testifying to the effect that he was familiar with the decedent's handwriting. The basis for this objection was that Gerald Matthews as an heir was an interested person in a suit against a decedent's assignee (the appellee, Olive Matthews), and therefore incompetent under the Dead Man's Statute, Fla. Stat., Sec. 90.05, F.S.A., to testify as to "transactions" with the decedent. (We note in passing the characterization of Olive Matthews as an assignee was not challenged in the lower court or on appeal, and that she is thereby assumed to be entitled to invoke the protection of Fla. Stat., Sec. 90.05, F.S.A., as an assignee). At the hearing the appellant was attempting to have Gerald Matthews identify the decedent's handwriting as a basis for comparison with alleged alterations in the stock certificate and corporate books of Alliance Corporation by a handwriting expert called as a witness later in the hearing. Objection to Gerald's identifying decedent's handwriting was sustained on the grounds that he became familiar with decedent's handwriting by watching her write and that these observations were "transactions" within the meaning of the statute. Fla. Stat., Sec. 90.05, F.S.A. provides that:
"No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."
Florida courts have defined transactions as "every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and include *504 every method by which one person can derive impressions or information from the conduct, condition, or language of another." Embrey v. Southern Gas & Electric Corp., Fla. 1953, 63 So.2d 258, 263; and Chapin v. Mitchell, 1902, 44 Fla. 225, 233, 32 So. 875, 878. This broad meaning has consistently been applied in this state, Stebnow v. Goss, Fla.App. 2, 1964, 165 So.2d 251; Broward Nat'l Bank v. Bear, Fla.App. 2, 1961, 125 So.2d 760, 84 A.L.R.2d 1352; and Embrey v. Southern Gas & Electric Corp., supra, except in the area of personal injury cases involving automobile accidents, Farley v. Collins, Fla. 1962, 146 So.2d 366; and Day v. Stickle, Fla.App. 3, 1959, 113 So.2d 559, 80 A.L.R.2d 1291.
More specifically in point than the general definition of transaction was the issue before the Florida Supreme Court in Holliday v. McKinne, 1886, 22 Fla. 153. In McKinne the question was whether an interested party could identify the decendent's handwriting. Plaintiff had brought a replevin action against the decedent's estate and the trial court allowed plaintiff to identify the decedent's handwriting on a bill of sale for the property in question. On appeal the decision was reversed and the court held that the witness was incompetent under the Dead Man's Statute despite the plaintiff's argument that the testimony concerning handwriting was an opinion rather than evidence of a transaction. This distinction was rejected because "the proof of signature to the bill was proving the very `transaction,' or proving both the acts and doings of the plaintiff * * *."
The rule from Holliday, supra, does not quite reach the problem presented here because the witness, Gerald Matthews, was asked to identify handwriting of the decedent on papers other than the stock certificate and corporate books in dispute. Annotations in 31 A.L.R. 460 and 58 A.L.R. 210 indicate that a majority of the courts from other jurisdictions do not follow the rule announced in Holliday, supra, but allow interested parties to give their opinions as to the handwriting of the decedent, even when on the disputed document itself. See In re House's Estate, 1945, 145 Neb. 866, 18 N.W.2d 500, 159 A.L.R. 401.
But Florida courts have traditionally looked to New York decisions in interpreting its Dead Man's Statute, which is patterned after the New York Act. Disbro v. Boyce, Fla.App. 3, 1960, 124 So.2d 756. The New York decisions hold that if the witness derives his knowledge of the decedent's handwriting from personally observing the decedent when writing, this observation is a "transaction." In re Meyers' Estate, 1937, 163 Misc. 743, 297 N.Y.S. 605; Wilber v. Gillespie, 1908, 127 App.Div. 604, 112 N.Y.S. 20; and Boyd v. Boyd, 1900, 164 N.Y. 234, 58 N.E. 118. In the case of Wilber v. Gillespie, supra, we have a parallel to the present case in that in the Wilber case the question was asked: "Other than the transaction in question here  that is, giving of the note or anything that led to the giving of this note  have you had occasion to see Benjamin Gillespie [the decedent] write his name, so as to familiarize yourself with his signature?" The appellate court held that the witness could not answer this question because:
"The precise evidence excluded in the case at bar was evidence of a transaction between the plaintiff and the decedent, by which the plaintiff derived impressions or information from the conduct of the decedent. The conduct was his writing his name in her presence a sufficient number of times to produce in her mind an impression or information from which, upon being shown another piece of paper, she would be qualified to testify that in her opinion it was the same handwriting with which she had familiarized herself in a transaction with him. In my opinion the evidence was properly excluded." (112 N.Y.S. at 25).
The same question was at issue in In re Myers' Estate, supra, and the New York *505 court similarly held the witness incompetent to testify. These decisions support the rule that an interested party is incompetent to testify that he learned to recognize a decedent's handwriting by observing her write.
In view of the broad meaning accorded "transaction" by the Florida courts, and further, since Florida follows the New York decisions interpreting the Dead Man's Statute, we hold that the chancellor did not err in prohibiting Gerald Matthews from identifying the decedent's handwriting.
In appellant's remaining points on appeal he questions whether the chancellor was correct in holding that the decedent's daughter-in-law, Odelite Matthews, was also incompetent to identify decedent's handwriting. This witness, although not an interested party, had never seen the decedent write, and after preliminary questioning the chancellor concluded that she was not sufficiently familiar with the decedent's handwriting. We fail to find an abuse of the chancellor's broad discretion in his determination that the witness was incompetent.
The appellant also claims that the chancellor erred in finding that he failed to sustain the material allegations of the complaint. On the basis of the record before us we would not have been justified in reversing the chancellor who had the opportunity of hearing all the evidence. The appellant may have established that there were certain irregularities in the corporate books, but we affirm the chancellor's finding that there was no proof of fraudulent conversion. The appellant also challenged several rulings by the chancellor excluding certain evidence which he sought to introduce. We find no need to enumerate the specific arguments relative to each point as we have found no error on the part of the chancellor. Most of these evidentiary questions have already been answered by our previous discussion.
In answer to appellant's last point we have found that the chancellor did not abuse his discretion in taxing costs against the appellant.
Having found the record in this case to be free from error, we affirm.
Affirmed.
ANDREWS, J., and STURGIS, WALLACE E., Associate Judge, concur.