Froessel, J. (dissenting).
On January 30, 1954, while serving in the United States Navy, petitioner took and passed the written examination for the position of patrolman in the New York City Police Department. After being honorably discharged from the Navy in December, he was permitted to complete the examination as a special military candidate, and passed the medical and physical tests in April and May of 1955. His name was then placed on an eligible list, and he was certified to the Police Commissioner as eligible for appoint *573 ment, subject to investigation as to his character and fitness. While the usual procedure of the commission was to complete the fitness investigation prior to certification, an exception was made in the cases of returning veterans, so as to afford them an opportunity to be considered for appointment in case the investigation was completed by the time their names were reached.
Petitioner had filled out a Police Department questionnaire in which he indicated that he had been court-martialed in the Navy but that the charges had been dismissed. A Police Department investigator inquired further, and learned that petitioner had been convicted by a general court-martial of forging endorsements on four money orders and one United States Treasury check, but that the conviction had been set aside by the Navy Board of Review on the ground that the evidence failed to establish guilt beyond a reasonable doubt.
According to the report of the Review Board, there was no evidence that petitioner had ever possessed or uttered the forged documents, nor that they had even passed through the office in which he worked, where some 40 other persons were employed. They were merely cashed by an unidentified person in the immediate vicinity of the Naval Air Station. The only evidence against him at the court-martial was the opinions as to similarity of handwriting expressed by two government employees, a United States Treasury Department examiner of questioned documents, and a document analyst of the United States Post Office Department. Since the board felt that expert opinions on handwriting similarity were of uncertain value (see Koag v. Wright, 174 N. Y. 36, 42, 44), and inasmuch as there was an abundance of good character evidence for the accused, it reversed “ the sentence and findings as incorrect in law and fact”, dismissed the charges and completely vindicated petitioner.
Notwithstanding this action of the Review Board and the subsequent grant of an honorable discharge to petitioner, the Police Department investigator sought to uncover the facts pertaining to the alleged forgeries. He interrogated petitioner; secured samples of his handwriting; charged him with forging what proved to be an authentic letter from the Navy Department; contacted the handwriting experts who testified at the *574 court-martial; and secured photostatic copies of three Treasury checks involved in the case, on only one of which petitioner had been charged with forging the endorsement. At the •investigator’s request, the handwriting expert at the police laboratory, who had no 1 ‘ preparatory education for this type of work” before entering the Police Department, compared the forged endorsements with the samples of petitioner’s handwriting and concluded that petitioner was the author of the endorsements. The investigator then forwarded all his data to the Chief of the commission’s Bureau of Investigation, informing him that the court-martial conviction had been set aside on a “ technicality of law ’ ’ and recommending that petitioner be disqualified. The Bureau Chief did not so recommend, but submitted a report of investigation to the commission incorporating the data furnished by the police investigator and made the following recommendation: “ For consideration re Military Disciplinary Record. Otherwise qualified.”
Thereafter, petitioner was summoned to appear before the commission to show cause why his name should not be removed from the eligible list, and he appeared with counsel on November 7, 1955. He was examined with respect to the forgeries, which he vigorously denied, and a week later was informed that the commission had reserved decision on his eligibility, and toould advise him when further action in his case was to be taken.
On January 9, 1956, without giving notice to petitioner, the commission held an ex parte hearing. The Police Department investigator and handwriting expert were examined and the latter testified that in his opinion petitioner had forged the endorsements on the three Treasury checks forwarded to him for analysis. In addition to this opinion evidence, character testimony and rank hearsay were admitted against petitioner in his absence. Although under the commission’s rules petitioner had the burden of proving his good character, he was never given an adequate opportunity to do so. On January 31, 1956, petitioner was notified that the commission had marked him not qualified. Thereafter, on March 22, 1956, petitioner instituted this proceeding to annul the commission’s determination as arbitrary and capricious, and to compel it to restore his name to its rightful position on the eligible list and to certify him for appointment.
*575 The petition alleged in part that the commission lacked power, under subdivision 4 of section 14 of the Civil Service Law, to strike from the eligible list a candidate who had passed the competitive examination and had been duly certified on the list. The answer denied these allegations, but did not set forth any facts as to the procedure followed with special military candidates, nor allege that petitioner had been certified subject to investigation as to his character and fitness. It was apparently for this reason that Special Term decided that the pleadings “ set forth an underlying issue of fact whether the petitioner was actually certified ”, and ordered a jury trial of this issue.
Although the pleadings on their face did raise an issue of fact as to whether petitioner had actually been certified, the decision of this issue could hardly have been dispositive of the controversy, since the commission had power to revoke a certification upon a finding that petitioner lacked the requisite character and fitness for the position (Rules of City Civil Serv. Comm., rule III, § VII, subd. 1, par. [b]; Matter of Hamilton v. Brennan, 203 Misc. 536; Matter of Haynes v. Brennan, 16 Misc 2d 13; Matter of Volts v. City Civil Serv. Comm., 8 Misc 2d 916). Since a finding on the issue of actual certification could in no way aid in resolving the main issue of law, namely, whether the commission had acted arbitrarily and capriciously in striking petitioner’s name from the eligible list and marking him not qualified, it would appear that Special Term erred in merely directing a trial of this issue. No appeal was taken from this intermediate determination, however, although the court granted permission to appeal pursuant to section 1304 of the Civil Practice Act.
The matter next came before Justice Greenberg at Trial Term,. and the parties waived a jury trial. The commission introduced evidence as to the procedure followed with respect to special military candidates, and the court concluded that petitioner had not been “ duly ” certified. The court went on to say that the commission’s conduct was “ subject to the strongest condemnation for the manner in which this matter was treated ’ ’, that ‘ ‘ The police officer who conducted the investigation ’ ’ was ‘ ‘ unworthy of the slightest belief ’ ’, and that on the basis of expert testimony alone, with no factual *576 evidence, petitioner was ‘ ‘ being deprived of his right to a position in the Police Department ’ The court had expressed similar sentiments at the trial and had indicated in no uncertain terms that ‘ ‘ if there is any way that I can find, legally and legitimately, based on the evidence, in favor of the Petitioner, I intend to do so, sir”. In concluding its opinion, the court stated: “ If this matter were before the court for definite disposition under article 78 * * *, it would unhesitatingly direct the Civil Service Commission to certify the petitioner. However, since the only matter which the court is called upon to determine is one of fact under the order of Special Term, it is constrained to conclude that the petitioner was not duly certified”. (Emphasis supplied.)
It is thus crystal clear that the trial court felt it lacked power, in the light of Special Term’s order, to reach the merits of the controversy, pass on the issues presented and award petitioner the relief prayed for. Inasmuch as section 1295 of the Civil Practice Act provides that the court which tries issues of fact in a special proceeding “ shall have power to render the final order ”, it would appear that the court took an erroneously narrow view of its power, and imposed a procedural strait jacket of its own making. The very reason for giving the trial court power to render the final order which, when section 1295 of the Civil Practice Act was enacted in 1937, represented a departure from existing law (Matter of Small v. Moss, 277 N. Y. 501, 507-508), was that the “ trial court is undoubtedly as capable as the court at special term to pass on the issues of law, and to compel a motion for a final order to be made to a court other than the trial court in such a case only makes for delay.” (Third Annual Report of N. Y. Judicial Council, 1937, p. 188.)
In any event, the grant of authority to the trial court to render the final order is permissive only and, inasmuch as the court felt it lacked power to pass on the issues of law, the logical and proper procedure would then have been to send the case back to Special Term. The court "not only failed to do this, but proceeded to enter a final order, the first portion of which dismissed the petition “ on the merits ”. In the second portion,
*577 The commission appealed to the Appellate Division from the second portion of the order, and petitioner did not file a cross appeal from that part of the order dismissing his petition “ on the merits ”. To him—not unreasonably—this disposition related to the only issue tried, namely, whether he had been fully certified; indeed, it could have no other meaning, particularly since the court gave him leave to begin anew. The Appellate Division, however, struck out the second portion of the order and, as so modified, affirmed on the erroneous ground that “ The dismissal of the petition on the merits determines the propriety of the act complained of, i.e., the striking of petitioner’s name from the eligible list. There being no appeal from that portion of the order we may not review it.” While the court recognized that it was “ apparent ” from the opinion of the trial court ‘ ‘ that it considered itself limited to- the determination of ’ ’ the specific issue of fact as to which a trial had been ordered, it . concluded that the trial court “ nevertheless did make a final order dismissing the petition ‘ on the merits ’ as it had the power to do ”.
The second portion of the trial court’s order was in and by itself erroneous, since the four-month Statute of Limitations to review the commission’s determination had expired and the court lacked power to extend it by authorizing, in effect, a completely new proceeding. The Appellate Division, however, in striking out the leave to begin anew, looked to the first portion of the order and squarely based its holding on the substantive inconsistency between the two parts of the order. The court thus treated the two portions of the order as inextricably connected and ruled in effect that the commission’s notice of appeal could not segregate part of the trial court’s disposition and present only that for review (see Matter of Burk, 298 N. Y. 450, 455). Of course we may not reach the merits of the commission’s action in striking petitioner’s name from the eligible list, as the Appellate Division could not, since no court of original instance had ever passed on it; but inasmuch as the Appellate Division did in fact review the entire order of the trial court, to the extent of holding that the dismissal “ on the merits ” necessarily determined the “ propriety of the act complained of ”, we may do likewise, to the extent of holding that there has in reality never been a trial on the merits and that petitioner is entitled to one.
*578 Since it is clear that the trial court felt it lacked power to reach the substantial issues, its dismissal “ on the merits ” could logically relate only to the narrow issue of fact which it tried. The only issue it felt empowered to rule upon was whether petitioner had been unconditionally certified for appointment, and all it decided was that he had not been. Even had petitioner taken a cross appeal from the first portion of the trial court’s order, there was in actual fact nothing to review (other than the narrow nondispositive issue decided), since no court of original instance had ever passed upon the merits.
It was not until the Appellate Division divorced the trial court’s opinions from its order, notwithstanding the fact that said opinions were incorporated therein, and looked at the latter in complete isolation, that petitioner became genuinely aggrieved by the dismissal of his petition “on the merits”. Only when the Appellate Division attributed to that dismissal a meaning it could not possibly have been intended to have did petitioner find himself completely out of court, without a trial on the merits. By holding that the trial court, in dismissing the petition “ on the merits ”, had thereby decided that petitioner’s name was properly stricken from the eligible list, the Appellate Division substantially changed the effect of the first portion of the trial court’s order to the irreparable detriment of petitioner. Inasmuch as petitioner has appealed to this court “ from each and every part ” of the Appellate Division’s order, we have the necessary jurisdiction to correct this gross error and to remit the proceeding to Special Term to pass on the merits of the controversy, namely, whether the action of the commission was arbitrary and capricious.
The order of the Appellate Division should be modified by reversing that part of the order affirming the dismissal of the petition on the merits, affirming that part of the order striking the second decretal portion of the trial court’s order and remitting the matter to Special Term to pass on the merits of the controversy.
Judges Dye, Ftjld, Van Voorhis and Burke concur with Judge Desmond; Judge Froessel dissents and votes to modify in an opinion in which Chief Judge Conway concurs.
Order affirmed.